## Richmond

### ROGER DALE LEAGUE

v.

### COMMONWEALTH OF VIRGINIA

No. 0466-87-2

Decided October 24, 1989

COUNSEL

John B. Boatwright, III, for appellant.

M. Katherine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLEMAN, J.—The appellant, Roger Dale League, was convicted by a jury of rape and sentenced to twenty years in the penitentiary. His appeal of the conviction raises three issues, the first two of which involve construction of the "rape-shield" statute, Code § 18.2-67.7. The issues are (1) whether the trial court erred in refusing to allow League to testify about a prior act of consensual sexual intercourse between the prosecutrix and him; (2) whether the court erred in barring League's testimony about an alleged agreement between the prosecutrix and him that she would allow him sex for money; and (3) whether the court erred in rejecting jury instruction "A" proposed by League.[1] We hold that the trial court properly rejected instruction "A" but erred in excluding League's proffered evidence. Thus, we reverse the conviction.

Prior to League's trial, the Commonwealth filed a motion *in limine* to prevent the defense from introducing evidence of an act of sexual intercourse between League and the prosecutrix on an unspecified date eight or nine months before the alleged rape. At the evidentiary hearing on the motion, the prosecutrix admitted that she voluntarily had sexual intercourse with League eight or nine months prior to the alleged rape on November 6, 1986. She

---

[1] *Instruction A*—

The defendant has testified that he did in fact have intercourse with [prosecutrix] and that she consented to have intercourse with him. In order to find the defendant not guilty of the charge of rape, you need not accept the defendant's testimony in every particular. The defendant's testimony, when combined with all of the other evidence in the case, need only raise a reasonable doubt in your minds as to any of the elements the Commonwealth must prove in this case. If such a reasonable doubt has been created by his testimony taken in conjunction with the other evidence in the case, you shall find the defendant not guilty.

denied League's assertion that afterwards they had discussed if he wanted more sex in the future it would be for money. League testified in the suppression hearing that they consensually had sexual intercourse eight or nine months ago, after which the following conversation allegedly occurred upon their return to the prosecutrix's home:

Q. What, if anything, was said to you by . . . [the prosecutrix] . . . regarding . . . any contact between the two of you in the future?

A. Yes, sir. She gave me her telephone number in front of her husband and told me any prior sex would cost me.

Q. Prior, or do you mean later?

A. I mean later sex, excuse me.

Q. All right, was there any amount mentioned?

A. Yes, sir.

Q. What was it?

A. $50.

To corroborate his account, League proffered a witness who he alleged was present and heard the conversation. The Commonwealth took the position that the evidence of earlier sexual intercourse and the discussion that future sex would be in exchange for money was inadmissible under Code § 18.2-67.7(A) of the rape shield law:

[E]vidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:

 Evidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation . . . provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case.

League argued that the two separate items of evidence—the admitted act of consensual sex between League and the prosecutrix and the remark that "sex in the future will cost you $50" were both relevant to his defense that the alleged rape was a consensual

act of intercourse. League contends that the evidence was admissible despite the rape shield statute. He contends that both the earlier sexual activity and the alleged terms set by the prosecutrix tended to explain or prove his claim that the sex on November 6, 1986, was "not accomplished by force, threat or intimidation." The trial court ruled that the evidence was inadmissible because it was too remote or did not occur "within a period of time reasonably proximate to the offense . . . ." The trial judge granted the Commonwealth's *in limine* motion and ordered counsel not to mention these two specific incidents in their opening statement to the jury.

The evidence at trial showed that at about 5:00 p.m. on November 6, 1986, the prosecutrix visited her sister and father with her two year old son and four other children for whom she babysat. One of the children was seven years old; the others were three years or younger. Upon her return home, the prosecutrix pulled into her driveway. While she was getting the children into the house, League pulled his vehicle behind her car. He began talking to her and followed her into the house.

The prosecutrix testified that she responded to League's conversation because she had met him once before and he was being "real nice." After some casual conversation, League "started getting nasty." He asked her to go into the bathroom with him for five minutes, "and I took it, the way that he was acting and talking, he wanted to have sex, . . . and, I told him, 'no.' " The prosecutrix testified that League offered her money, stating that he knew she needed it. She refused. League then grabbed her hair and pulled her into the bathroom. Eventually, according to the prosecutrix, he forced her into the bedroom, removed her clothes, tearing a button from her pants, and raped her.

According to the prosecutrix, League made her swear several times not to tell anyone about the rape and then left the house. The prosecutrix immediately telephoned her sister, who testified that she came to the prosecutrix's house and found her upset, crying and shaking. The sister contacted their father, who notified the police.

League testified that he did have sexual intercourse with the prosecutrix but insisted that she had been a willing participant. He testified that he had seen the prosecutrix twice before Novem-

ber 6, 1986, and talked with her on the telephone two or three times. She denied the telephone conversations and admitted only one prior encounter. At the earlier suppression hearing League proffered that on November 6, the prosecutrix invited him into her house, talked to him about her separation from her husband and her money problems, and asked if he remembered their agreement about sex for money. League said he replied, "I told you I could help you out." He further testified at the hearing on the motion *in limine* that soon after this they went into the bedroom, where the prosecutrix disrobed, and they had sexual intercourse. Before leaving the house, League asked her whether she wanted money, but he did not give her any. The trial court ruled inadmissible all references about sex for money.

During League's testimony at trial, the admissibility of the discussion and understanding concerning sex in exchange for money was again raised by defense counsel out of the presence of the jury. Defense counsel argued:

> What I'm telling this court is, this goes to his state of mind, that the rape shield section is completely inapplicable to the state of mind. This is a statement by that lady to him, offered not for its truth, but the effect on his state of mind, and why he continued to have contact with the lady, and why sex was initiated on November 6.
>
> * * *
>
> The reason that he had consensual sex with her is because it had been consensual before, because she made the remark about money for sex, and because his frame of mind as a result of the sex act on that previous occasion, and her accompanying remark.

The trial court ruled that the rape-shield statute was applicable and again found the evidence of the prior specific incident of sexual conduct inadmissible under the statute because it did not occur within a period of time reasonably proximate to the offense charged.

Later at trial, League called David Lee Ralls as a witness. Out of the presence of the jury, defense counsel explained that he intended to offer Ralls' testimony that he was present when the prosecutrix made the statement to League that in the future sex would cost him fifty dollars. Defense counsel made essentially the

same arguments to support the admissibility of Ralls' testimony. The court rejected the evidence for the same reasons.

## I.

For purposes of this appeal, and for reasons that will become apparent, we treat the admissibility of evidence about the prior act of consensual sexual intercourse between the prosecutrix and League and the admissibility of the discussion of future sex for money as presenting but one evidentiary question. In doing so we do not decide, nor do we intend to imply, that similar understandings or discussions under other circumstances from which an inference might be drawn that a prosecutrix prospectively consented to have sex would constitute "prior sexual conduct" for purposes of Code § 18.2-67.7. *See Winfield v. Commonwealth*, 225 Va. 211, 301 S.E.2d 15 (1983) (in addressing Code § 18.2-67.7(B)—a "motive fabricated charge"—evidence of the prosecutrix's alleged agreement with the defendant to have sex for money was admitted without challenge).

■ While the prosecutrix denied that any discussion about future sex for money ever occurred, in deciding whether the proffered evidence was inadmissible under Code § 18.2-67.7, we must ask whether, if the jury had accepted the defendant's version, might such evidence have raised a reasonable doubt about the defendant's guilt. If so, the evidence is relevant and admissible, unless excludable under Code § 18.2-67.7. However, a defendant cannot be deprived of the opportunity to put his evidence and version of the facts before the jury so "as to deprive a criminal defendant of his Sixth Amendment right to confront and cross-examine his accuser and to call witnesses in his defense," *Winfield*, 225 Va. at 218, 301 S.E.2d at 19 (citing *Davis v. Alaska*, 415 U.S. 308 (1974)), or simply because the trial court finds the prosecutrix's version more credible than the defendant. *See Graves v. Garraghty*, 618 F. Supp. 1348, 1350-51 (E.D. Va. 1985).

## II.

Before 1981, Virginia treated the admissibility of evidence of past sexual contact by a prosecutrix according to the common law. Evidence of previous sexual relations between the accused and the victim was material and admissible to show consent. *Winfield*, 225 Va. at 218, 301 S.E.2d at 19 (citing *Finney v. Commonwealth*,

154 Va. 808, 812, 152 S.E. 555, 556 (1930)). Generally, at common law, in prosecutions for rape, an accused could show that the victim had engaged in previous sexual intercourse with him or with others for the purpose of proving that force was unnecessary. Prior acts of sexual indiscretions or proof of promiscuity or being unchaste were considered relevant to determine whether a woman would consent to have sex with the accused. *See generally* Annot., 94 A.L.R.3d 257 (1979).

This rule was subjected to increasing criticism for a number of years. In response, the General Assembly enacted a comprehensive sexual assault law patterned after similar reform efforts in other jurisdictions. Elimination of the reasonable resistance requirement and limiting the admissibility of evidence of a victim's past sexual conduct were two legislative priorities. *See* Kneedler, *Sexual Assault Law Reform in Virginia—A Legislative History*, 68 Va. L. Rev. 459 (1982).

■■■■ Code § 18.2-67.7 was enacted to exclude evidence in sexual assault cases of the "general reputation . . . of the complaining witness's unchaste character or prior sexual conduct." *See Winfield*, 225 Va. at 217-19, 301 S.E.2d at 19-20 (discussing problems the General Assembly addressed by enacting Code § 18.2-67.7). At issue in this case is the provision of the rape-shield statute which provides that evidence of "prior sexual conduct" between the complaining witness and the accused is admissible only if it is relevant and if it occurred within a period of time reasonably proximate to the offense charged "under the circumstances of this case." The rape shield statute has rejected the common law notion that once consensual sex has been shown in the past it always is relevant to prove that subsequent sexual intercourse was consensual. Instead, the rape shield statute requires the question of the admissibility of "prior sexual conduct" between a prosecutrix and defendant be decided on a case-by-case basis.

■■■■ Under the rape-shield statute the approach for determining admissibility of evidence of "prior sexual conduct" between a prosecutrix and defendant is two-fold. First, as with any evidence, a trial court must determine whether it is relevant. Evidence which tends to establish a fact in issue is relevant. *See* C. Friend, *The Law of Evidence* § 134 (3d ed. 1988). Thus, in a rape prosecution evidence of "prior sexual conduct" which tends to establish a matter in issue would be admissible, unless barred by the second

of the three enumerated exceptions in the rape-shield statute or by other evidentiary rules. *See Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987).

■ The second prong of Code § 18.2-67.7(A)(2) requires the trial court to determine whether the "prior sexual conduct" occurred within a period of time reasonably proximate to the offense charged. Here, the trial court found that League's proffered evidence of sexual intercourse with the prosecutrix was barred by Code § 18.2-67.7(A)(2) because it was too remote to the alleged rape.

Relevancy is a legal determination for the trial judge which is subject to review on appeal. *Evans-Smith*, 5 Va. App. at 196, 361 S.E.2d at 441. Evidence that League and the prosecutrix on a prior occasion had engaged in consensual sexual intercourse was relevant for the jury to consider in resolving the conflicting accounts of whether the prosecutrix consented on a later occasion, provided the previous sexual encounter was "reasonably proximate" to the offense charged. *See* Tanford and Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U. Pa. L. Rev. 544, 553 (1980) (rape-shield statutes universally allow a defendant to show a pattern of *recent* consensual sexual activity between the complainant and himself if consent is an issue in the case).

(6) The determination whether "prior sexual conduct" is "reasonably proximate to the offense charged" is a function not only of time, but also of "the circumstances of [the] case," including the situation and factors surrounding the prior conduct, the relationship between the parties, and the circumstances of the alleged offense. The trial court's determination is subject to review on appeal. *See Graves*, 618 F. Supp. at 1351. While no reported Virginia decision has construed "reasonably proximate" as used in the rape shield statute, we are mindful that the term must be applied in a manner that will not deprive a criminal defendant of his sixth amendment right to confront and cross-examine his accuser and to call witnesses in his defense, *Winfield*, 225 Va. at 218, 301 S.E.2d at 19, or deny him of his due process right to "be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Crane v. Kentucky*, 476 U.S. 683 (1986); *Chambers v. Mississippi*, 410 U.S. 284 (1973). We find that under the circumstances of this

case the trial court erred in ruling that League's proffered evidence was not "reasonably proximate" to the offense charged.

■ While the term "reasonably proximate" is not subject to one fixed or rigid meaning, it is not an ambiguous term. *See Sydnor Pump & Well Co. v. Taylor*, 201 Va. 311, 317-18, 110 S.E.2d 525, 530 (1959). It is a relative term which varies according to the situation. *See id.* "In ordinary use and common acceptation, the word 'reasonable' means 'fair; just; ordinary or usual; not immoderate or excessive; not capricious or arbitrary.' It means what is 'just, fair and suitable under the circumstances.' " *Id.* The word "proximate" means immediate; near; direct; next in order. Black's Law Dictionary 1103 (5th ed. 1979). The antonym of proximate is remote. "Remote" means at a distance; far off; inconsiderable; slight. *Id.* at 1164. However, the term "reasonably proximate" cannot be closely confined within any particular time frame. *See State v. Jones*, 716 S.W.2d 799, 800-01 (Mo. 1986) (en banc). Whether prior sexual conduct is "reasonably proximate" to the offense charged must be decided based on the totality of the circumstances of each case. While the time which has elapsed between the two alleged sexual acts is an important factor to be considered, a court also must consider the nature of the prior relationship and "sexual conduct," whether the relationship was a continuing one, and the circumstances surrounding the alleged offense. These factors, together with the time lapse between the alleged acts, govern whether the evidentiary value of the prior conduct is so remote that it cannot fairly be said to have probative value on the issue whether the prosecutrix consented to the sexual act with which the accused is charged.

In the present case, the trial court held that the lapse of eight or nine months between the prior sexual conduct and the offense charged rendered the evidence inadmissible. We hold that the trial court erred by considering only the lapse of time in ruling that the prior sexual conduct was too remote to be admissible, and by failing to consider other circumstances of the relationship. Based on League's account of what transpired, the alleged rape was so intertwined with the prior consensual sexual intercourse and the alleged discussion about future sex for money that to exclude that evidence deprived him of a meaningful opportunity to present his defense. Without League's evidence, the jury was presented with a case of an alleged rape between virtual strangers,

adding great weight to the prosecutrix's contention that she did not consent.

Based on League's proffered testimony, the sexual intercourse involved in the offense charged was directly related and intertwined with the relationship which had developed between the parties as a result of their sexual encounter eight or nine months before and the alleged conversation concerning future sex for money. According to League, prior to the incident of which he was charged, the prosecutrix specifically asked if he remembered their agreement that future sex would cost him $50. The jury was not permitted to hear this evidence. According to the prosecutrix, League offered her money, but she declined. The jury was permitted to hear this testimony. Assuming as we must that the jury would accept League's version at trial, the prosecutrix's alleged statement, which was contemporaneous with the alleged rape, tended to explain the act for which the accused was on trial. This alleged statement established a direct relationship between the "offense charged" and the prior sexual conduct and the alleged agreement. To exclude the evidence of prior sexual conduct or the agreement, but permit the prosecutrix to testify that League offered her money, resulted in the accused having to present an incomplete and misleading view of the relationship between the parties. His evidence of the prior sexual contact and the agreement concerning future sexual contact for money bore directly on her testimony that League offered to pay her money for the act.

All circumstances must be considered in determining whether the prior sexual conduct will directly and fairly bear upon the question of consent. The trial court erred in determining that evidence of the prior sexual conduct and the agreement which the parties allegedly made was too remote. The trial court erred in excluding League's proffered evidence, thereby requiring that we reverse his conviction. *See Cash v. Commonwealth*, 5 Va. App. 506, 511, 364 S.E.2d 769, 771-72 (1988).

### III.

Because the question about jury instruction "A" will likely arise on retrial, we address League's contention that the trial court erred in rejecting it. We hold that the trial court properly refused to grant the instruction.

■ "A 'refusal to grant instructions covering principles of law upon which the jury has already been properly instructed is not error.' " *Williams v. Commonwealth*, 228 Va. 347, 349, 323 S.E.2d 73, 74 (1984) (quoting *Asbury v. Commonwealth*, 211 Va. 101, 107, 175 S.E.2d 239, 243 (1970)). In fact, trial courts should avoid giving redundant or repetitive jury instructions. *Johnson v. Commonwealth*, 2 Va. App. 447, 457, 345 S.E.2d 303, 308-09 (1986). Such would have been the case if Instruction "A" had been given. Instruction "A" was a finding instruction which told the jury to acquit if they found, in effect, that the Commonwealth failed to prove the element that sexual intercourse was by force or against the prosecutrix's will. The trial court had through other instructions defined the elements of rape, who had the burden of proof, and that proof must be beyond a reasonable doubt. Instruction "A" would have merely duplicated the legal principles given in other instructions. Further, Instruction "A" commented upon League's testimony and his account of what occurred; it would have had the effect of giving undue emphasis to League's account of the events. *Id.* Therefore, the trial court properly refused League's Instruction "A."

*Reversed and remanded.*

Barrow, J., concurred.

Cole, J., dissenting.

I respectfully dissent from the decision of the majority. I agree that two top legislative priorities in passage of the rape shield law were the elimination of the reasonable resistance requirement in rape cases and limiting the admissibility of evidence of a victim's past sexual conduct. Another major objective was to encourage victims to report sex crimes and to testify against the perpetrators without fear of having their past sexual history exposed. The statute was intended to place the focus in sexual assault cases upon the conduct of the accused rather than upon the prior conduct of the victim.

The petition for appeal in this case was granted to the appellant, limited to consideration of three questions: (1) did the trial court err in refusing to allow the defendant to testify about sexual intercourse between the prosecutrix and the defendant; (2) did the trial court err in refusing to allow the defendant to testify

about an agreement between him and the prosecutrix regarding sex for money; and (3) did the trial court err in refusing defense Instruction A?

In order to effectuate the purposes of the statute, a scheme is provided for an evidentiary hearing to allow the trial judge to hear the testimony privately and rule on its admissibility in advance of the trial. Code § 18.2-67.7(C), in pertinent part, provides:

> Evidence described in subsections A and B of this section shall not be admitted and may not be referred to at any preliminary hearing or trial until the court first determines the admissibility of that evidence at an evidentiary hearing to be held before the evidence is introduced at such preliminary hearing or trial. The court shall exclude from the evidentiary hearing all persons except the accused, the complaining witness, other necessary witnesses, and required court personnel.

In this case, the Commonwealth's attorney filed a motion *in limine*, moving the trial court to prohibit the defendant's introduction of evidence of specific instances of "prior sexual conduct" between the accused and the prosecutrix, as provided in Code § 18.2-67.7. The hearing took place immediately before the trial commenced. The only witnesses who testified were League and the prosecutrix.

The testimony at the hearing was limited because there never existed any real relationship between the prosecutrix and League. League claimed that he first met the prosecutrix in the early part of 1986 at David Ralls' house. She had come to the house to breed her dog with one that Ralls owned. She waited in the living room for this event to take place and League claimed that "we all sat in the living room and talked." The prosecutrix did not remember meeting League on this occasion. Evidence of this meeting was admitted at trial since it did not involve sexual conduct.

League further testified at the hearing on the motion that he went to the home of the prosecutrix eight or nine months prior to the alleged rape in order to see her husband about some fishing trips. Both the prosecutrix and her husband, who were separated but living separately in the marital home, were present with several other persons on this occasion. They drank beer and watched

an x-rated movie on television. At some point in time, the prosecutrix and League left the house in League's truck to get some beer. The prosecutrix and League had consensual sexual relations in the truck. The truck got stuck and they were late returning to the prosecutrix's home. He further stated that after returning to her home, she gave him her telephone number in the presence of her husband and told League that any future sex would cost him $50. The prosecutrix denied that this conversation took place. The trial judge ruled that League could not introduce this evidence at trial because the alleged conduct did not occur within a reasonably proximate time before the offense.

League testified that after this occasion he called the prosecutrix three or four times on the telephone and talked to her. The record does not contain any reference to the nature of the conversations. The prosecutrix denied that there were any telephone conversations. The trial judge admitted evidence of the telephone conversations since they did not involve sexual conduct.

The last contact between League and the prosecutrix occurred on November 6, 1986, the night of the charged offense of rape. According to League's testimony at the hearing on the *in limine* motion, the prosecutrix asked him if he remembered the agreement. If such a statement was made, the record does not show any response to it on League's part. He said he thought she was talking about money and thereafter, accordingly to his testimony, they had consensual sex. The prosecutrix testified at the hearing that League showed up at her house without invitation. She denied that she asked him about any agreement and further testified that the sexual intercourse was by force and against her will. The trial judge ruled that League could not testify at trial about her alleged reference to their agreement but otherwise permitted League to fully develop his defense of consent.

Concerning the first question assigned as error, I agree with the majority that Code § 18.2-67.7(A)(2) requires the trial judge to make a finding in each case as to whether evidence of prior sexual conduct is "reasonably proximate" or remote. I further agree that in making this determination, a totality of all the circumstances must be considered. However, in my judgment, the most important factor normally will be the period of time that has elapsed between the prior sexual contact and the offense, although the significance of time will vary according to the nature of the relation-

ship between the parties. To illustrate this point, if the prosecutrix and the defendant had a close sexual relationship, and the accused, being in the military service, got transferred to foreign duty for an extended period of time, upon his return home the passage of a significant period of time might not be of great importance and the accused might have reason to anticipate that the relationship would continue where it left off. However, if the prosecutrix and the accused had the same close relationship, and she told him to get out of the house and that she never wanted to see him again, the passage of even a short period of time might render the prior sexual conduct irrelevant. There was never any close sexual relationship between the prosecutrix and League and none whatsoever for eight or nine months. Thus, the relevancy of the prior sexual contact was rendered de minimis by the passage of time. I agree with the trial judge that the prior sexual act was not "reasonably proximate" in time and, therefore, was properly excluded at trial.

The second question presented by League involves the admissibility of the assertion, which he attributes to the prosecutrix, concerning the "agreement" for sex in the future. League contends that evidence of the assertion about sex for money arose directly out of the earlier act of sex, and was admissible as a specific instance of sexual conduct. The trial judge ruled that all of the testimony concerning sex for money was inadmissible because it was not "reasonably proximate" to the charged crime. For the reasons previously stated in connection with the admissibility of the prior sexual contact, I agree and would hold that the trial judge properly excluded the evidence.

The majority further concludes that, based on League's account of what transpired, the alleged rape was so intertwined with the prior consensual sexual intercourse and the discussion about future sex for money that to exclude the evidence would present the jury with an inaccurate picture of the relationship between the parties. The majority further states that the jury was presented with a case of an alleged rape between virtual strangers, adding great weight to the prosecutrix's account that she did not consent. While I agree that the rape-shield statute cannot be applied in a manner that would deprive the defendant of a fair trial or of his right to confront and cross-examine his accusers, I do not believe under the circumstances of this case that any such deprivation oc-

curred. Specifically, I do not agree that the jury was in anyway misled by the exclusion of this evidence any more so than a jury would be "misled" by the exclusion of any non-relevant evidence. Even if the jury was presented with this evidence and believed League's account, the fact remains that the parties were "virtual strangers."

In addition to the above two occurrences, League proffered testimony that immediately prior to the alleged rape on November 6, 1986, the prosecutrix specifically asked if he remembered their agreement that future sex would cost him $50. This, he stated, meant to him that she was talking about money. The prosecutrix denied that she made such a statement at the time of the rape. The majority attempts to use this alleged statement as a bootstrap to justify the admission of evidence of an earlier sexual encounter. Presumably, the majority argues that the alleged statement at the time of the rape was "reasonably proximate" and should have been admitted. From this predicate, the majority then argues that the evidence of the earlier sexual contact should be admissible to explain the significance of the alleged statement. I disagree. In my view this statement, if made, was part and parcel of the earlier events and was properly excluded with them. In my opinion, the trial judge properly declared all of the evidence regarding the prior sexual contact inadmissible because it was not reasonably proximate to the charged offense.

I have several further disagreements with the majority opinion. It is well settled that on appeal we must view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, and the trial court's judgment will be affirmed unless plainly wrong or without evidence to support it. *Barker v. Commonwealth*, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985). Additionally, the credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of the fact finder. *Id.* Questions of admissibility of evidence, including relevance and remoteness, are matters within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of discretion. *See Wise v. Commonwealth*, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988); *Brown v. Commonwealth*, 3 Va. App. 182, 186, 348 S.E.2d 849, 852 (1986). The majority has made no finding that the trial court abused its discretion.

In order to justify their conclusion that this evidence was admissible, the majority states that, from their review of the record, the trial court erred by considering only the lapse of time in ruling that the "prior sexual conduct" was too remote to be admissible. The majority fails, however, to specify what other factors, apart from the earlier single sexual contact, the judge should have considered. This is understandable since, in my view, there were no other relevant factors to consider. The fact is that there was no relationship between the parties during the interim period for him to consider, except the alleged phone calls. Moreover, there is nothing in the record to show that the trial judge did not consider all of the facts and circumstances of the case. The trial judge did not make any formal findings of fact in the case, nor did he purport to set forth every reason for his decision to exclude the evidence. He is not required to do so. His decision was a ruling on all points raised before him and he was not required to state his reasons as to all of them. *Freeman v. Peyton*, 207 Va. 194, 196, 148 S.E.2d 795, 797 (1966). I, therefore, disagree with the analysis upon which the majority has proceeded.

The majority's opinion seems to proceed from the view that, whenever there is conflicting evidence, the truthfulness of the witnesses shall be submitted to the jury for their determination. The rape-shield law provides that evidence of "prior sexual conduct" shall not be admitted in evidence "until the court first determines the admissibility of that evidence at an evidentiary hearing." Code § 18.2-67.7(C). This statute creates a practical problem for the trial court when the evidence at the hearing is conflicting, as it was in this case. If the accused claims that "prior sexual conduct" took place with the prosecutrix within a reasonably proximate period of time and she denies that it occurred at all, what should the trial court do? Should the trial court determine who is telling the truth or should it submit the issue to the jury for determination? The statute requires the court to decide questions of admissibility at a closed evidentiary hearing. What should a trial judge do when he or she concludes that the evidence of the alleged prior sexual encounter is insufficient to support a finding that the encounter in fact occurred? Should the evidence nonetheless be admitted if the trial judge further finds that alleged prior sexual contact occurred within a reasonably proximate time? Only one jurisdiction has ruled on this issue. It held that "the trial court had authority to pass upon the truth of defendant's accusations of

prior sexual conduct with the prosecutrix, and if he did not believe the testimony to preclude its admission in evidence." *Turley v. State*, 356 So. 2d 1238, 1244 (Ala. Crim. App. 1978). Since I believe that the prior sexual contact in this case did not occur within a reasonably proximate time of the offense I need not resolve this question. I do believe, however, that the state may, at a minimum, provide that such evidence should be excluded if the evidence produced regarding the alleged encounter is insufficient to support a finding that the prior sexual contact occurred. Such a standard in my view, would not deprive the defendant of his right to a jury trial or to a fair trial.

Finally, the majority has asserted that the rape-shield law must be applied in a manner that will not deprive a criminal defendant of his sixth amendment right to confront and cross-examine his accuser, and to call witnesses in his defense. I agree. The defendant, however, made no such contention in this case. Therefore, it cannot be raised for the first time on appeal. Rule 5A:18.

For the reasons stated, I would affirm the decision of the trial court.