# CIRCUIT COURT OF THE CITY OF SUFFOLK

Commonwealth of Virginia

v.

Claude Bernard Beverly

Case Nos. CR99JF0174, -175, -192 through -203

BY JUDGE D. ARTHUR KELSEY

May 18, 2000

The Commonwealth accuses Claude Bernard Beverly of multiple sexual offenses against his daughter, the complaining witness, in violation of Va. Code Ann. §§ 18.2-67.1, 18.2-67.2, 18.2-67.3, and 18.2-370.1 (Michie 1996 & Supp. 1999). The defendant has filed a pretrial *in limine* motion under the Virginia Rape Shield Law, Va. Code Ann. § 18.2-67.7, seeking leave to introduce at trial evidence of the alleged "unchaste character and prior sexual conduct" of the complaining witness. *See* Defendant's Notice Pursuant to § 18.2-67.7 (March 21, 2000). For the following reasons, the Court grants the motion in part and denies it in part.

I

The Commonwealth has charged the defendant with fourteen counts alleging sexual abuse of his minor daughter between February and July 1999. The defendant strenuously denies the charges, claiming each to be factually baseless. According to the defendant, his daughter has fabricated the entire story in retaliation for his paternal discipline of her for having consensual sex with a boy in a church parking lot in April or May 1999. *See* Transcript of Proceedings at 3-10 (May 12, 2000). After she allegedly admitted to this

indiscretion, the defendant asserts that she became "resentful" because he forbade her from going to any "nighttime church functions." *Id.* at 9-10. His daughter later became pregnant and, under the defendant's theory of the case, she "had to name somebody as the perpetrator of the pregnancy [so] she named her father as opposed to the person who had [sic] actually did get her pregnant." *Id.* The defendant, however, concedes that his daughter's pregnancy (according to the medical records) could not have occurred as a result of the specific sexual conduct with the boy in the church parking lot. *See* Defendant's Memorandum at 3 (May 15, 2000); Transcript of Proceedings at 5-8 (May 12, 2000). The defendant seeks to introduce into evidence a conversation he claims to have had with his daughter in which she admitted to the sexual tryst in the church parking lot. The daughter denies the conversation ever took place. The defendant argues that this evidence should be admissible on the merits despite the general rule, codified in the Rape Shield Law, forbidding evidence of the alleged victim's prior sexual conduct. Upon clearing that hurdle, the defendant then argues that his proffered evidence also has immunity from the evidentiary rule prohibiting hearsay. For the following reasons, the Court agrees that the Rape Shield Law does not itself render the proffered evidence inadmissible. The Court disagrees, however, that the proffered evidence survives the hearsay rule. Though the daughter's statements in the alleged conversation may qualify (assuming a proper foundation) as impeachment evidence, it cannot be admitted into the record as proof of the matter asserted.

The pretrial hearing, required by Va. Code § 18.2-67.7(C), took place on May 12, 2000. *See* Transcript of Proceedings (May 12, 2000); *cf. McNeil v. Commonwealth*, 1994 WL 188213 (Va. App. May 17, 1994) (defendant waives evidentiary inclusion rules of the Rape Shield Law by failing to request a pretrial hearing under subsection C).

## II

Before the enactment of the Rape Shield Law, Va. Code Ann. § 18.2-67.7, Virginia courts permitted defendants charged with rape to introduce evidence of the unchaste character of the prosecutrix on the ground that it was relevant to the consent defense. *See* Charles E. Friend, *The Law of Evidence in Virginia*, § 5-6, at 171 (5th ed. 1999). The defendant, however, could not offer in most cases evidence of specific sexual conduct between the alleged victim and others. *Id.* The 1981 enactment of the Rape Shield Law supplanted common law materiality principles with a four-tiered statutory matrix. *See generally* H. Lane Kneedler, *Sexual Assault Law Reform in Virginia — A*

*Legislative History*, 68 Va. L. Rev. 459 (1982). It begins with the premise that evidence of the "general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall *not* be admitted." Va. Code Ann. § 18.2-67.7(A) (emphasis added). Absent the consent of the "complaining witness," evidence of specific instances of her prior sexual conduct can be admitted only if it is "relevant" and meets one of four statutory exceptions. *Id.*

The first exception covers situations where the proffered evidence shows an "alternative explanation for physical evidence of the offense" which the prosecution intends to offer at trial. Va. Code Ann. § 18.2-67.7(A)(1). This exception applies when the Commonwealth asserts that the defendant's semen was recovered from the alleged victim, or that intercourse with the defendant caused the victim to contract a disease, or to become pregnant, or to sustain a physical injury. *Id.* The exception, however, requires some causal nexus between the "alternative explanation" and the "physical evidence" allegedly implicating the defendant. *See Thompson v. Commonwealth*, 28 Va. App. 543, 546, 507 S.E.2d 110, 112 (1998) (evidence of prior consensual vaginal intercourse could not provide an alternative explanation for the presence of rectal scars allegedly caused by forcible anal sodomy).

The second exception deals only with "sexual conduct between the complaining witness and the accused." Va. Code Ann. § 18.2-67.7(A)(2). This prong of the statute codifies the common law rule permitting such evidence when relevant to the "contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness . . . ." *Id.* Here too, the statute includes a causality analysis — only sexual conduct "within a period of time reasonably proximate to the offense charged" can be admitted. *Id.*; *see League v. Commonwealth*, 9 Va. App. 199, 385 S.E.2d 232 (1989), *aff'd en banc*, 10 Va. App. 428, 392 S.E.2d 510 (1990).

The third exception, another well-recognized common law principle, permits evidence of specific sexual conduct if "offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution." Va. Code Ann. § 18.2-67.7(A)(3). If the Commonwealth opens the door to otherwise inadmissible evidence, the defendant may introduce contrary evidence over the prosecutor's objection.

The first three exceptions to the general rule of inadmissibility have neatly compact principles to guide the analysis. The fourth exception, however, applies broadly to any relevant evidence offered to "show that the complaining witness had a motive to fabricate the charge against the accused." Va. Code Ann. § 18.2-67.7(B). The breadth of this exception must be understood in

light of the considerable tension between statutory evidentiary exclusions and the accused's constitutional protections — particularly his right under the Sixth Amendment of the U.S. Constitution to cross-examine his accusers, *Clinebell v. Commonwealth*, 235 Va. 319, 325, 368 S.E.2d 263, 266 (1988), and his right under the Virginia Constitution to "call for evidence in his favor," *Brown v. Commonwealth*, 29 Va. App. 199, 212-13, 510 S.E.2d 751, 757-58 (1999) (citing Va. Const. Art. I, § 8).[1]

As the Virginia Supreme Court has made clear, "evidentiary constraints" should give way when they collide with due process rights so "fundamental to the truth-finding process." *Clinebell*, 235 Va. at 325, 368 S.E.2d at 266. For this reason, "the constitutional problems" implicated by the Rape Shield Law are "instructive in determining the legislative intent as to the scope of the exceptions" contained in the statute. *Winfield v. Commonwealth*, 225 Va. 211, 219, 301 S.E.2d 15, 20 (1983). To be sure, because of these concerns, "[i]n certain situations, evidence of sexual conduct of the victim may be admissible even though such instances are not mentioned in the statute." Friend, *supra*, § 5-6, at 173; *see also Neeley v. Commonwealth*, 17 Va. App. 349, 358, 437 S.E.2d 721, 726 (1993).

The defendant in this case claims his proffered evidence satisfies the first exception in the Rape Shield Law, which allows evidence of an "alternative explanation" for physical evidence. *See* Va. Code Ann. § 18.2-67.7(A)(1). Under this theory, the daughter's pregnancy (which ended in a miscarriage) qualifies as the physical condition needing an alternative explanation. As the defendant's counsel puts it, "the rape statute says that the evidence . . . comes in to explain physical conditions such as pregnancy, and her statement is that she was having sex with somebody else would explain the pregnancy." Transcript of Proceedings at 4 (May 12, 2000).

The defendant's argument stumbles on the issue of causation. Both the defendant and the Commonwealth agree that the specific "act of sexual intercourse" allegedly admitted by the defendant's daughter "did not cause the pregnancy." Defendant's Memorandum at 3 (May 15, 2000); *see also*

---

[1] The constitutional concerns animate other interpretative issues arising out of the Rape Shield Law, particularly the distinction drawn between prior sexual conduct and nonconduct. *See, e.g., Clinebell*, 235 Va. at 322, 368 S.E.2d at 264 (False statement regarding past sexual behavior is not "conduct" and thus not barred by the Rape Shield Law.); *Brown v. Commonwealth*, 29 Va. App. at 216, 510 S.E.2d at 759 (Prior testimony in an unrelated rape prosecution is not "conduct" within the meaning of the Rape Shield Law.); *Evans v. Commonwealth*, 14 Va. App. 118, 122-23, 415 S.E.2d 851, 854 (1992) (The complaining witness's statement that she contracted a sexually transmitted disease does not involve prior sexual "conduct.").

Transcript of Proceedings at 5-8 (May 12, 2000). Having admitted that the episode in the church parking lot did not cause the pregnancy, the defendant cannot logically assert that conduct provides an "alternative explanation" for the pregnancy. That so, the evidence cannot be put before the jury under Va. Code Ann. § 18.2-67.7(A)(1). *See Thompson*, 28 Va. App. at 546, 507 S.E.2d at 112.

The defendant contends that evidence of sexual conduct by the complaining witness "during the allegation period is relevant to show how she would have become pregnant by means other than having sex with the defendant." Defendant's Memorandum at 3 (May 15, 2000). This is agreed, but the *proffered* sexual conduct, by the defendant's own admission, cannot physically have been the reason for his daughter's pregnancy. As a result, it simply misses the point to assert that some unspecified sexual conduct *other than* the specific conduct described in the proffer could be an "alternative explanation" for the pregnancy.

When questioned directly on whether the factual proffer included any evidence of sexual conduct *other than* the episode with the boy in the church parking lot, both the defendant and his counsel said it did not. *See* Transcript of Proceedings at 8-9, 15-17 (May 12, 2000). The defendant bears the burden of making a sufficient proffer of evidence. To the extent the proffer is "unclear and insufficient," the Court cannot speculate about what evidence might otherwise exist or whether such evidence would be admissible "under the exceptions to the rape shield statute." *Horsley v. Commonwealth*, 1998 WL 886978 (Va. App. Dec. 22, 1998).

To the extent the defendant seeks to introduce the proffered (but unrelated) evidence of sexual conduct to create an inference that some unproffered (but related) evidence of sexual conduct exists, the Court cannot concur. By its very nature, the Rape Shield Law restricts the "alternative explanation" exception by requiring evidence to be *"limited to* evidence designed to explain the . . . pregnancy . . . ."* Va. Code Ann. § 18.2-67.7(A)(1) (emphasis added). The defendant's attempt to build inference upon inference goes beyond the narrow limits of the statute. It amounts to little more than an effort to "degrade" the alleged victim's reputation and to "impeach her general credibility" in violation of the Rape Shield Law. *Thompson*, 28 Va. App. at 546, 507 S.E.2d at 112. The Court agrees with the Commonwealth that to allow such evidence on this ground would divert the jury's attention from the real issue, the guilt or innocence of the accused.

The defendant next contends that the proffered evidence should be admitted because it, coupled with his allegation of his daughter's bitter reaction to his discipline, "indicate[s] a reason why the complainant elected

to fabricate these charges against her father when faced with incontrovertible proof of her sexual activity — her pregnancy." Defendant's Memorandum at 3 (May 15, 2000). The Commonwealth disagrees, arguing that only a "pattern of behavior which directly related to the conduct charged against the complaining witness" can satisfy this prong of the statute. Commonwealth's Memorandum at 3 (May 15, 2000) (citing *Winfield v. Commonwealth*, 225 Va. 211, 301 S.E.2d 15 (1983)).

On this issue, the statute uses sweeping language: "[n]othing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused." Va. Code Ann. § 18.2-67.7(B). When placed against the backdrop of the accused's constitutional rights, the "motive to fabricate" ground should be read broadly. The Court thus should pass only on the factual and legal relevance of the evidence, not its credibility or persuasive force. In doing so, the Court must ask whether "a reasonable doubt about the defendant's guilt" could exist if the fact finder "accepted the defendant's version" of the events. *League*, 9 Va. App. at 205, 385 S.E.2d at 236.

Framed this way, the issue is whether the proffered evidence has "any tendency to establish a fact which is properly at issue" under the Rape Shield Law. *Evans v. Commonwealth*, 14 Va. App. 118, 121, 415 S.E.2d 851, 853 (1992) (citation omitted). The defendant's motive-to-fabricate argument, while apparently resting only on the uncorroborated evidence in the proffer, passes the relevance test. If the defendant's daughter in fact retaliated against him for disciplining her for sexual misconduct — and did so by counterattacking with her own accusation of sexual misconduct against her disciplinarian — that fact would provide a basis for assessing the defendant's guilt or innocence.[2] Though a fact finder may be unimpressed by the probative value of this evidence, a "sufficiently direct link" exists between the "past sexual conduct and the motive to fabricate to warrant the admission of that conduct." Kneedler, *supra*, 68 Va. L. Rev. at 496; *see also Johnson v. Commonwealth*, 9 Va. App. 176, 184, 385 S.E.2d 223, 227 (1989) (a "logical nexus" must be shown).

---

[2] The Commonwealth argues in the alternative that evidence of the defendant's alleged discipline, but not the underlying reason (his disapproval of his daughter's sexual conduct) should be admitted. *See* Commonwealth's Memorandum at 5 (May 15, 2000). This suggestion, the defendant correctly observes, unfairly takes the proffered evidence out of context. According to the defendant, the baseless charge of *his* sexual misconduct relates directly to his daughter's reaction to his discipline of *her* sexual misconduct. To understand fully the defendant's point, the triggering event for the daughter's alleged resentment should be considered by the fact finder.

The Commonwealth finds fault with this analysis, contending that only a "pattern of behavior" can serve as a predicate for the motive-to-fabricate prong of the statute. *See* Commonwealth's Memorandum at 3 (May 15, 2000). Nothing in the statute, however, requires a "pattern" or a series of sexual misdeeds. Though a pattern would be more probative than an isolated act, at least for purposes of persuading the fact finder, evidence falling short of a regular course of conduct can easily be hypothesized as a basis for a complaining witness's motive to press a meritless charge. *Cf. Evans*, 14 Va. App. at 124, 415 S.E.2d at 855 ("[E]vidence that a complaining witness contracted a venereal disease after the date of the alleged offense is relevant because it tends to prove that the infected person harbors bias or ill-will against a recent sexual partner.").

*Winfield* did not interpolate, as the Commonwealth argues, a pattern requirement into the motive-to-fabricate section of the statute. There, the Virginia Supreme Court reversed a trial court for failing to admit evidence that the defendant claimed showed a "pattern" of blackmail. *Winfield*, 225 Va. at 219, 301 S.E.2d at 20. "We agree with Winfield," the Supreme Court said, that evidence tending to show a "distinctive pattern of past sexual conduct" involving extortion could satisfy the motive-to-fabricate test. *Winfield*, 225 Va. at 220, 301 S.E.2d at 20. The Court qualified its agreement, however, by observing that the "pattern" must show behavior "which directly relates to the conduct charged against the complaining witness in the case on trial." *Winfield*, 225 Va. at 220, 301 S.E.2d at 21. Neither the holding nor the rationale of *Winfield* supports the Commonwealth's assertion that *only* continuous patterns of past sexual conduct can trigger the motive-to-fabricate prong of the Rape Shield Law.

## III

Having shown that the Rape Shield Law poses no statutory bar to the proffer, the defendant still must demonstrate that the evidence survives the common law principles governing admissibility. The statutory provisions serve merely to define the legal and logical relevance of evidence of sexual conduct by a complaining witness in a sex crime case. Nothing in the statute, however, attempts to do away with the ordinary admissibility rules that govern all cases in the trial courts.

Thus, despite the defendant's contention to the contrary, "any evidence of prior sexual conduct by the complaining witness must comply with the usual rules of evidence as well as the requirements of the 'rape shield' law." *Winfield*, 225 Va. at 221, 301 S.E.2d at 21. In most cases, this means that the

trial court must "ascertain whether the evidence is presented in a form which meets an exception to the hearsay rule, and is otherwise admissible." *Id.*

The defendant seeks to introduce evidence of his daughter's out-of-court statement as impeachment (after asking her about the incident and then provoking an expected denial). Subject to a cautionary instruction, courts permit impeachment evidence in sex crime cases in certain circumstances. *See* Friend, *supra*, § 4-10, at 138-42. Impeachment usually takes the form of prior *false* accusations by the complaining witness. *Id.*

Ordinarily, a witness's character may "not be impeached by showing specific acts of untruthfulness or bad conduct." *Clinebell*, 235 Va. at 323-24, 368 S.E.2d at 265. In sex crime cases, however, the Virginia Supreme Court "recognizes more liberal rules concerning impeachment of complaining witnesses." *Clinebell*, 235 Va. at 324, 368 S.E.2d at 265. These more relaxed rules permit a defendant to introduce specific evidence of a prior false accusation in rebuttal to the complaining witness's denial. The trial court, when the defendant asserts this basis for admissibility, must first make a "threshold determination that a reasonable probability of falsity exists." Friend, *supra* § 4-10, at 138-42 (quoting *Clinebell*, 235 Va. at 325, 368 S.E.2d at 266).

An accused may also offer evidence of sexual conduct when relevant to the alleged victim's specific bias or motive to accuse the defendant falsely. *Id.* § 4-10, at 140-41. The Court, therefore, agrees with the defendant that he may cross-examine the complaining witness — subject to an appropriate limiting instruction — about the alleged prior inconsistent statement concerning the boy in the church parking lot.

The defendant, however, seeks to do more. He wants to use his daughter's hearsay statement "for the truth thereof" under the party admission and state-of-mind exceptions to the hearsay rule. *See* Defendant's Memorandum at 3-4 (May 15, 2000). Neither exception applies to this case.

The party admission exception to the hearsay rule, as the defendant correctly contends, governs criminal as well as civil cases. *See* Friend, *supra*, § 18-38, at 748 (summarizing Virginia cases); Boyd-Graves Conference, *Guide to Evidence in Virginia*, Rule 803(0) and note at 87 (1998). No Virginia case, however, has treated a complaining witness as the "party" in a criminal case or her out-of-court statements as party "admissions" for purposes of the hearsay rule.

True, the interests of the complaining witness and those of the Commonwealth may parallel each other, but they are not so aligned that they should be treated as one party litigant. A sexual abuse victim does not possess the right to "control the proceedings, to make a defense, to adduce and cross-

examine witnesses, and to appeal from the judgment." *State v. Antillon*, 229 Neb. 348, 354, 426 N.W.2d 533, 538 (1988). Given the critical differences between a party litigant and a mere complaining witness, the two should not be treated as one for purposes of the party admission exception to the hearsay rule. *Id.*

Nor does the state-of-mind exception apply. That exception governs when the out-of-court statement refers to a presently existing state of mind in a case where the mental condition of the declarant is relevant. *See* Friend, *supra*, § 18-18, at 699. Here, the proffered statement by the daughter to the defendant (that she "had sexual relations with a boy . . . in a car in a church parking lot")[3] does not describe a presently existing state of mind. It describes a past historical event. No mention is made of the daughter's mental or emotional state at the time of the declaration. And no showing of relevance has been made as to her specific state of mind at that time. Indeed, the alleged motive to fabricate arose *later* in response to the defendant's discipline of his daughter for her alleged sexual misconduct.

These evidentiary rulings inflict little, if any, prejudice on the defendant's theory of the case. Its relevance secured by the motive-to-fabricate prong of the statute, the proffered statement about the daughter's sex in the church parking lot need not be *true* for the defendant to present fully his defense. The fabrication, under his theory, stems from his daughter's desire to punish him for punishing her. It matters not whether the daughter actually committed the indiscretion — only that she claimed to have done so and that her father disciplined her for it.

When offered for that purpose, the daughter's comments do not even implicate the hearsay rule. *See Church v. Commonwealth*, 230 Va. 208, 212, 335 S.E.2d 823, 825 (1985) (statement of child abuse victim that sex was "dirty, nasty, and it hurt" was admissible, not for its truth, but for its probative value on the issue of whether the child had been abused); *Brown v. Commonwealth*, 25 Va. App. 171, 181, 487 S.E.2d 248, 253 (1997) (*en banc*) (sex abuse victim's conversation with the defendant about trading sex for drugs was admissible, not for its truth, but for the fact that they had a conversation involving the topic at all).

## IV

In sum, the Rape Shield Law does not bar the defendant's proffered evidence as the Commonwealth contends. Under the motive-to-fabricate prong

---

[3] *See* Defendant's Memorandum at 2 (May 15, 2000).

of the statute, the evidence has legal and logical relevance to the defendant's argument that his daughter retaliated against him with baseless charges because he disciplined her for admitting to having sex with a boy in the church parking lot. The hearsay rule, however, prohibits the defendant from introducing the daughter's out-of-court statement for the truth of the matter asserted. The defendant's request that the evidence be received "for proof of the truth thereof"[4] can be supported by neither of the two offered exceptions to the hearsay rule nor any compelling equitable rationale. The proffered evidence may only be introduced, after a proper foundation has been made, (i) as impeachment during cross-examination of the defendant's daughter, and (ii) as non-hearsay evidence of a relevant matter not involving the truth of the matter asserted.

It is so ordered.

## July 7, 2000

The Commonwealth accuses Claude Bernard Beverly of fourteen counts of sexual abuse of his daughter in violation of Va. Code Ann. §§ 18.2-67.1, 18.2-67.2, 18.2-67.3, and 18.2-370.1 (Michie 1996 and Supp. 2000). The parties submitted the case to a jury on May 19 and 22, 2000, resulting in an acquittal on one charge and a hung jury on all remaining charges. The Commonwealth elected to retry the defendant, and the Court has scheduled the trial for July 13, 2000. The defendant has filed a pretrial motion *in limine* seeking to exclude his wife from "testifying to her hearsay claim that God had told her that her daughter had been molested." *See* Defendant's Notice and Motion (June 14, 2000). For the following reasons, the Court grants the motion in part and denies it in part.

I

According to the Commonwealth, the defendant committed repeated acts of sexual abuse (including rape, fornication, indecent liberties, sexual object penetration, and forcible sodomy) with his minor daughter between February and July 1999. The defendant strenuously denies the charges, claiming each to be factually baseless. *See* Transcript of Closing Arguments at 21 (May 19, 2000) ("[T]his is all a lie. A terrible, terrible lie."). According to the defendant, his daughter has fabricated the entire story in retaliation for his paternal discipline of her for having consensual sex with a boy in April or

---

[4] *See* Defendant's Memorandum at 4 (May 15, 2000).

May 1999. *See* Transcript of Proceedings at 3-10 (May 12, 2000). The defendant also asserts that his daughter's resentment stemmed, in part, from his earlier admonition that "if you [ever] get pregnant, if you find yourself pregnant, you're going away to reform school." Transcript of Closing Arguments at 22 (May 19, 2000). The motion *in limine* focuses on the manner in which the daughter first reported the alleged molestation. The first person to learn of the alleged abuse was the child's mother, the defendant's wife. A woman of the Christian faith, she testified that "something just began to minister to me, telling me that my child had been molested." Transcript of Testimony at 104 (May 19, 2000). Despite the absence of any concrete evidence, the mother developed a strong conviction. As she explained it, "God ha[d] been dealing with me about this for a long time." *Id.* During her prayers, the mother testified, "God told me that [my daughter] had been molested." *Id.* Burdened with the gravity of this knowledge, the mother "couldn't handle it anymore," so she directly raised the subject with her daughter. *Id.* "And I said Kristina, I don't know how to tell you this but God has been dealing with me about this for a long time. I said he has told me that you've been molested or either somebody is molesting you." *Id.* In response to this revelation, the daughter "dropped her head" and explained that her father had been molesting her over a period of many months. *Id.* She then gave to her mother, and later to the police, an extremely detailed recollection of specific acts of rape, sodomy, and other sexual crimes allegedly committed by her father. The defendant suggests, in a subtle way, that the mother's role in this matter may be suspect. When asked, for example, if he *ever* went into his daughter's room to talk with her alone, the defendant said no. *Id.* at 132-33. He would never go into his daughter's room if her mother were not also present. To be alone with his daughter in her room, he explained, might "create a problem" and thus "her mama might think something [was] going on." *Id.* at 133. The defendant also argues that the daughter's first report (to her mother) occurred many months after the alleged abuse began. At the first trial, the defendant requested and received a jury instruction advising the jurors that the lack of a prompt complaint may be considered when analyzing reasonable doubt. For her part, the daughter said she kept the matter to herself for fear that breaking the news would give her mother a "nervous breakdown." *Id.* at 104. Under the Commonwealth's view of the case, had the mother not confronted her daughter with what God had said about the molestation, the daughter might never have reported the abuse to anyone.

## II

Arguing that "there is no God exception" to the hearsay rule, the defendant moves the Court to exclude the mother's comment about God telling her of her daughter's molestation. *See* Hearing Transcript at 2 (June 21, 2000). The defendant further contends that *any mention of God* — even if not violative of the hearsay rule — should be excluded from the trial because it would prejudice unfairly the defendant. The first point has sufficient merit to prevail; the second does not. Under Virginia law, a statement "other than one made by the declarant while testifying at the trial" when offered at trial "to prove the truth of the matter asserted" is inadmissible hearsay absent a recognized exception. Charles E. Friend, *The Law of Evidence in Virginia* § 18-1, at 642 (5th ed. 1999). As old as Blackstone's *Commentaries*, the hearsay rule rests on a cascading series of justifications. Among the most common are the concerns that the "out-of-court declarations were not made under oath" and that the "out-of-court declarant cannot be cross-examined." Friend, *supra*, at § 18-2, at 645. "The use of such declarations denies to the opponent the right to confront the witness against him." *Id*. Equally frustrating is that the "trier of fact has no opportunity to observe the demeanor of the declarant on the stand." *Id*. The literal language of the hearsay rule, animated by its common law rationale, renders inadmissible the proffered statement by God to the alleged victim's mother. Though the lack of an oath presents no conceptual impediment to the declaration,[5] the defendant's counsel cannot cross-examine God or subject statements attributable to him to the procedural safeguards of a courtroom. For these reasons, the Court grants the motion in *limine* to the extent the statements are offered for the truth of the matter asserted. The absence of a "God exception" to the hearsay rule, however, implies no denigration of the sincerity of the mother or the authenticity of her prayer life. Nor does it suggest that the statements cannot have relevance for a reason *other* than the truth of the matter asserted. *See generally Garcia v. Commonwealth*, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (*en banc*). It is a "time-honored principle of evidence law that, in general, if evidence is admissible for *any* purpose, it is admissible." Friend, *supra*, § 18-3, at 649 (emphasis in original). Showing the effect of an out-of-court statement on the listener does not violate the hearsay rule. It matters not, in

---

[5] It does, however, raise an unanswerable tautology. In Virginia, absent a religious or conscientious objection, witnesses swear to tell the truth "so help me God," Virginia Handbook for Judges and Clerks, at II:A-20 (1996-97 ed.); Va. Code Ann. § 8.01-405 (1992 Repl. Vol.), and may be required to place their hand on the Bible (but not kiss it) while taking the oath, *see* Va. Code Ann. § 49-10 (1998 Repl. Vol.).

this context, whether the statements are true or false. In other words, the hearsay rule:

> does not operate to exclude evidence of a statement, request, or message *offered for the mere purpose of explaining or throwing light on the conduct of the person to whom it was made.* The evidence was admitted not for the purpose of showing the [truth or falsity of the statement] but for the purpose of showing the reason for the. [witness's] action.

*Garcia,* 21. Va. App. at 451, 464 S.E.2d at 566 (quoting *Fuller v. Commonwealth,* 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960)) (emphasis added); *see also Weeks v. Commonwealth,* 248 Va. 460, 477, 450 S.E.2d 379, 390 (1994); *Upchurch v. Commonwealth,* 220 Va. 408, 410, 258 S.E.2d 506, 508 (1979).

Two tests, however, must be passed. The test for logical relevance has a comparatively low threshold. "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." *Cash v. Commonwealth,* 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citation omitted). Stated differently, evidence is "relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." *Ragland v. Commonwealth,* 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). The test for legal relevance, on the other hand, requires "a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value'." *Braxton v. Commonwealth,* 26 Va. App. 176, 186, 493 S.E.2d 688, 692 (1997) (citations omitted). In this case, the defendant argues that his daughter fabricated the entire story and used the occasion of her mother's inquiry to let loose her deception. To understand why the child's mother — without any other objective basis for doing so — would question the daughter directly about sexual abuse, it becomes important to learn what the mother knew and how she knew it. Without understanding the mother's reason for bringing the subject up, one cannot fathom a rational reason for her raising such a distasteful and tragic topic with her daughter. The challenged evidence, therefore, has logical relevance for the purpose of "explaining or throwing light on the conduct of the person to whom it was made." *Garcia,* 21 Va. App. at 451, 464 S.E.2d at 566 (citation omitted). The defendant concedes that the evidence has contextual significance (thus passing the logical relevance test), but believes the mother's testimony should be reworded to say: "She had a feeling something was wrong .and as a result of this feeling, confronted her daughter." Hearing Transcript at 5 (June 21, 2000); *see also id.* at 3. The term

"feeling" must be substituted for "God," the defendant argues, because of the prejudicial invocation of God as an omniscient corroborator of the daughter's claim of being molested. The defendant's suggestion, however, raises as serious a problem as it seeks to resolve. As a general rule, even if clearly prejudicial, evidence cannot be *reformulated* in an effort to remedy admissibility defects. If evidence is unfairly prejudicial, it is simply excluded. Though courts routinely dissect evidence and excise its objectional parts, they do not recreate it in a materially different form and then order the witness to deliver the testimony in the authorized version. Here, the child's mother did not say she had a "feeling." She did not describe a hunch. She said God spoke to her. *See* Transcript of Testimony at 104 (May 19, 2000). It is this evidence, not some watered-down substitute, that must be evaluated under legal relevance rules. The hard questions of this case cannot be so easily avoided. The defendant's argument about prejudice presumes that jurors would be favorably impressed with the mother's claim that she heard a direct and highly specific word from God. That supposition does not at all appear certain. We live in an age that views with skepticism the role of Divine Providence and His superintendence over the affairs of men. For this reason, as the Commonwealth points out, "[m]any people are not going to believe that God spoke to anyone." Hearing Transcript at 5 (June 21, 2000). Consistent with the times, jurors may prefer instead to characterize prayer as little more than a neurotic conversation with oneself.[6] Those familiar with the spiritual discipline of prayer, however, may approach the subject less cynically. As one writer has described it, prayer may look like "one talker aping two" from the perspective of those outside the conversation. C. S. Lewis, "Prayer," *Poems*, edited by Walter Hooper (Harcourt Brace Jovanovich 1964).[7] But to people

---

[6] According to Sigmund Freud, this neurosis stems from psychological needs. The person of faith, Freud argued, mistakenly believes he "has in prayer a direct influence on the divine will, and in that way insures for himself a share in the divine omnipotence." Sigmund Freud, *Weltanschauung — A Philosophy of Life*, Lecture XXXV (1932).

[7] In *Poems*, C. S. Lewis, a Professor of Literature and Language at Magdalen College, Oxford, described his understanding of the mysterious nature of prayer this way:

"Master, they say that when I seem
To be in speech with you,
Since you make no replies, it's all a dream
One talker aping two.
They are half right, but not as they
Imagine; rather, I

of faith, prayer involves a very real dialogue with an immanent and personal divine being. *Id.* The metaphysical dimension of prayer, from the vantage point of those engaged in it, provides a sense of reality that the purely material world never can. *See generally* Richard J. Foster, *Celebration of Discipline*, ch. 3, at 33-46 (Rev. ed. 1988).

These widely disparate viewpoints between the religious and irreligious can be found in our law as well. Individual rights were once thought to be secured by our "Creator" and regulated by the "laws of Nature and of Nature's God." Declaration of Independence ¶ 1. "This was undoubtedly the view of the men who framed the Constitution, including the First Amendment. Thomas Jefferson, who was perhaps the most free-thinking of the founding fathers, said in his first message as President, that 'the liberties of a nation [cannot] be thought secure when we have removed their only firm basis, a conviction in the minds of the people that their liberties are the gift of God'." Harold Berman, *The Interaction of Law and Religion*, 31 Mercer L. Rev. 405, 406 (1980). It seemed a settled proposition, until relatively recently, that we were "a religious people whose institutions presuppose a Supreme Being." *Zorach v. Clauson*, 343 U.S. 306, 313-14 (1952) (Douglas, J.); *see also Holy Trinity Church v. United States*, 143 U.S. 457, 465 (1892). That conclusion seemed particularly secure when one "recalled that George Washington himself, at the request of the very Congress which passed the Bill of Rights" proclaimed a national day of prayer to "Almighty God." *Santa Fe Independent Sch. Dist. v. Doe*, 530 U.S. ___, 2000 U.S. LEXIS 4154 at *48, 68 U.S.L.W. 4525, 4533 (U.S. June 19, 2000) (Rehnquist, C.J., dissenting).

No such consensus exists today. To be sure, the concept of "Nature's God" as the ultimate sovereign lawmaker has fallen upon particularly hard times. Influenced by the evolving pluralism of our people and the dissolving recognition of our religious heritage, our law now views religious expression as having an intrinsically coercive edge. Indeed, the law presumes that even a relatively innocuous prayer to God (such as one spoken by a student at a

---

Seek in myself the things I meant to say,
And lo! the wells are dry.
Then, seeing me empty, you forsake
The listener's role, and through
My dead lips breathe and into utterance wake
The thoughts I never knew.
And thus you neither need reply
Nor can; thus you while we seem
Two talking, thou art One forever, and I
No dreamer, but thy dream."

school football game) may be viewed by some as a "personally offensive religious ritual." *Santa Fe Independent Sch. Dist.*, 2000 U.S. LEXIS at \*38, 68 U.S.L.W. at 4531 (Stevens, J.). What was thought (at least by its proponents) as a modest effort at accommodating people of faith has run headlong into a modern, secular view that "bristles with hostility for all things religious in public life." 2000 U.S. LEXIS at \*48, 68 U.S.L.W. at 4533 (Rehnquist, C.J., dissenting).

In this case, the mixed reception given to religion in general and prayer in particular undermines the defendant's argument of prejudice. As the Commonwealth puts it, the evidence simply "cuts both ways." Hearing Transcript at 3 (June 21, 2000). It is just as likely that the jurors will outright reject, rather than accept, the notion that God spoke to the mother. They may conclude that the mother's revelation came, not from God, but from her own furtive imagination, and as for the daughter, that she simply used the opportunity to redirect the accusation against her estranged father. The defendant appears to fear the *possibility* that some jurors (presumably people of faith) may be prejudiced against him by the mother's testimony. This fear under-estimates the objectivity of the average juror and exaggerates the potential for partiality. Moreover, the presence of "incidental undue prejudice" — to the extent any exists — can be "diminished and minimized" by an instruction advising the jurors to consider the evidence only for the limited purpose of explaining the mother's conduct and not for asserting a truth. *Robbins v. Commonwealth*, 31 Va. App. 218, 224, 522 S.E.2d 394, 397 (1999). The law presumes jurors will be faithful to their oath and follow the Court's instructions. *Spencer v. Commonwealth*, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990); *Burley v. Commonwealth*, 29 Va. App. 140, 147, 510 S.E.2d 265, 269 (1999). No reason exists in this case for distrusting this presumption. *See also LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983); *Lewis v. Commonwealth*, 211 Va. 80, 84, 175 S.E.2d 236, 239 (1970); *Asbury v. Commonwealth*, 211 Va. 101, 105, 175 S.E.2d 239, 242 (1970). No matter the religious or irreligious sentiments of the jurors, we can justifiably expect them to be conscientious when presented with a clear and direct cautionary instruction.

## III

In sum, the hearsay rule precludes the admission of the mother's dialogue with God if offered for the truth of the matter asserted — that is, that her daughter in fact had been molested. The testimony, however, has contextual relevance to explain the background of the child's first report of the alleged

abuse. With the proper cautionary instruction, the evidence may be admitted on this limited basis.

It is so ordered.