## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### RAYMOND D. PADGETT v. BON AIR REALTY COMPANY, INC.

#### May 24, 1928.

1. VENDOR AND PURCHASER—*Agency—Suit Against Holder of Record Title on Theory that Vendor was Holder's Agent—Case at Bar.*—In the instant case the Bon Air Realty Company was the owner of a sub-division and contracted with one H. to sell him certain lots in the sub-division, among which were lots Nos. 37, 38, 39 and 40, which furnished the basis for this controversy. H. sold the lots in question to complainant. There was nothing to indicate the relation of agency between the Bon Air Realty Company and H. On the contrary, complainant's bill alleged that the Bon Air Realty Company agreed to sell and H. agreed to buy certain lots. The record title remained in the Land Company. Any interested person could have promptly determined where the title to the lots resided. The bill of complaint made no charge of fraud or collusion between the Land Company and H.

   *Held:* That the court did not err in dismissing complainant's bill as to the Bon Air Realty Company.

2. VENDOR AND PURCHASER—*Purchaser from Purchaser—Only Protected so far as his Vendor could have Demanded Relief—Case at Bar.*—In the instant case complainant was a stranger to defendant realty company and even if his position had been such as to entitle him to demand from his vendor a deed for the lots in controversy, he could only be protected as, and if, his vendor could have demanded relief from the realty company. The rights of the realty company and complainant's vendor, having been determined by a final decree in a chancery cause, the door was closed upon complainant in so far as the realty company was concerned.

3. VENDOR AND PURCHASER—*Rights of Purchaser from Purchaser—Case at Bar.*—The instant case was a suit by complainant against a realty company and complainant's vendor, who had a contract with the realty company for the purchase of lots in a sub-division of the realty company. Deeds for the lots when sold by complainant's vendor were to be made directly from the realty company to the purchasers. The facts alleged did not establish the contention of

complainant that his vendor was the agent of the realty company. There was no privity between the realty company and complainant. Whatever rights complainant had must be traced through his vendor with whom he contracted.

4. CONTRACTS—*Parties—Action on Contract by Stranger to the Contract—Party for whose Benefit Contract made.*—Before a stanger can avail himself of the exceptional privilege of suing for the breach of an agreement, to which he is not a party, he must at least show that it was intended for his direct benefit.

5. WORDS AND PHRASES—*Privies.*—Privies are "persons connected together or having a mutual interest in the same action or thing, by some relation other than that of actual contract between them."

6. BILL IN EQUITY—*Dismissal of Bill—Agency—Privity.*—Where the allegations of complainant's bill did not make out a case of principal and agent as respects a realty company and complainant's vendor, and there was no privity between complainant and the realty company, a decree sustaining a demurrer to the bill and dismissing the cause was plainly right as to the realty company.

Appeal from a decree of the Circuit Court of Arlington county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Chas. T. Jesse* and *W. Thomas French*, for the appellant.

*J. K. M. Norton*, for the appellee.

McLEMORE, J., delivered the opinion of the court.

Appeal from a decree of the Circuit Court of Arlington county, entered February 25, 1927, sustaining a demurrer and dismissing complainant's bill as to Bon Air Realty Company, Incorporated.

Bon Air Realty Company, Incorporated, was the owner of a sub-division in Arlington county known as Bon Air, and in December, 1921, entered into an agree-

ment with Walter P. Harlow, whereby it contracted to sell him certain lots in said sub-division among which were lots Nos. 37, 38, 39 and 40, and which furnishes the basis for this controversy. These were only a part of the lots covered by the agreement between the realty company and Harlow, whose numerous purchases and resales to the public extended over a period of several years.

While the bill is not in all respects clear in its allegations, we gather therefrom that the realty company had contracted with Harlow in a manner that gave him sole control of the development and marketing of the unsold lots in Bon Air. The land company from time to time would agree to sell, and Harlow would agree to buy certain designated lots at a stipulated price, and subject to certain conditions as to buildings, etc., but the title to the lots was retained in the vendor until the purchase money was paid, with a forfeiture clause which could be invoked by the land company, if payments were not paid as provided in the contract.

Armed with this contract of purchase, Harlow, in turn, undertook to sell the land to purchasers generally, when, and as, they might be found. He fixed his offering prices, terms, etc., signed his contracts for sales "Walter P. Harlow, vendor," and usually when a purchaser to whom he had made a sale had paid for his property, Harlow would arrange with the land company to execute the deed direct to the purchaser, as a matter of convenience and of economy.

Keeping in mind the foregoing outlines, or *modus operandi*, as between Bon Air Company and Harlow and we reach the point where Harlow agreed to sell to Raymond D. Padgett for $560.00 the four lots heretofore referred to, and the following contract of sale was entered into:

"Alexandria, Virginia.

"Received of Raymond D. Padgett, this 20th day of August, 1923, the sum of twenty dollars ($20.00), to be applied on the purchase price of lots No. 37, 38, 39, 40, Bon Air, in Block No. 1, Arlington county, Virginia.

"Terms: Purchase price . . . $560.00
            "Above deposit . . 20.00
            "Balance. . . . . . . 540.00 payable by fifty-four notes of $10.00 each, bearing interest, to be drawn by the purchaser to the order of Walter P. Harlow, vendor, dated the 20th day of August, 1923, and payable on the 20th day of each month thereafter. In the event of default of purchaser, all amounts paid hereunder shall be forfeited to vendor as liquidated damages after sixty (60) days notice in writing to vendee.

"When purchase price is fully paid, purchaser shall receive deed in fee simple to said lot; subject, however, to the following restrictions:

"1. No building shall be erected on said property nearer than fifteen (15) feet to the street line of any lot.

"2. No dwelling shall be erected to cost less than two thousand dollars ($2,000.00).

"3. Every dwelling, single or double, erected in said sub-division shall stand at least two and one-half feet from the side line of lots.

"4. No lot or lots shall ever be sold, leased or rented or in any way conveyed to any person or persons of African descent.

"WALTER P. HARLOW, Vendor."

The vendee made seven monthly payments of $10.00 each on the purchase price, the last payment being March 20, 1924, and alleges in his bill that he has always been ready to pay the residue of said notes, but that Harlow has failed and refused to make a deed

for the property.    The bill in which this allegation is made was filed November 2, 1926 (more than two and half years after complainant discontinued meeting the installment notes), and is asking for relief against both Harlow and the realty company.

During the year 1921, 1922 and 1923 Harlow was actively engaged in buying and selling Bon Air lots, and in order to make conveyances to those of his clients who had paid for their lots, induced the land company to make deeds to these purchasers when the company had not been paid therefor by Harlow; the result being a considerable indebtness from Harlow to the Bon Air Company; a refusal to continue the relationship further, and the suit of May 29, 1926, for the termination of their agreements, the settlement of their differences and collection of the money due from the Harlows to it.

This last mentioned chancery cause was entitled *Bon Air Realtr Company, Incorporated* v. *Walter P. Harlow and H. Richard Harlow*, and was finally disposed of on July 3, 1926, by a consent decree cancelling all contracts which had been entered into between the parties for the sale of lots, and establishing in the complainant company the title to all undeeded lots referred to in the several agreements, which were contracts on the part of the Bon Air Company to convey certain lots therein designated to Harlow when the purchase money had been paid.    Among the lots covered by this decree were those referred to as the basis for the cause in judgment.

To the decree appealed from in the instant cause which sustains the demurrer there are four assignments of error which may be summarized as follows:

1. That Harlow was the agent of Bon Air Company, and his acts bound the realty company.

2. That in the suit last above referred to Padgett should have been a party.

3. That said suit was a secret, collusive and fraudulent proceeding, with the purpose of defeating Padgett's claim to the lots in question, and that therefore the decree can now be collaterally attacked.

4. That Padgett is not bound because there is no such privity between him and Harlow as will preclude him from asserting his rights independently against the principal, the Bon Air Company.

The first assignment presents the real issue in the cause, a proper solution of which renders a disposition of the others of no great difficulty.

The contract with Harlow is not unusual, but is one in which Harlow, it may be presumed, was anxious to enter. He was given entire control of the sale of the Bon Air lots, under a contract which might prove quite profitable, depending upon the popularity of the property; the spread between the price agreed to be paid for the lots by Harlow and the sales price to his customers, with which Bon Air Company had nothing to do, as well as the intelligently directed energy of Harlow.

The record title remained in the land company, Harlow being protected by a written agreement fixing the price of the lots, and the other requirements to be performed, before deeds for the property could rightly be demanded.

Appellant had agreed with Harlow for the purchase of the four lots, Nos. 37, 38, 39 and 40, by the agreement of August 20, 1923, heretofore copied in this opinion, from which it appears that the transaction was entirely with Harlow as seller, cash paid to him and notes for sundry installments payable to him. There is nothing to indicate the relation of agency between Bon Air Company and Harlow. On the contrary, the bill

specifically alleges that   *   *   "formal contracts were entered into between the said Bon Air Realty Company, Incorporated, agreed to sell and the said Walter P. Harlow agreed to buy certain lots, etc."

Every person dealing with Harlow was put on actual notice, by the contract of August 20, 1923, that he was acting for himself and not as agent for a principal, disclosed or undisclosed.

[1] The record title of Bon Air Company was notice to the world of its legal title, and those persons dealing with Harlow as owner of the property if such there were did so at their peril.   The bill of complaint makes no charge of fraud or collusion between the land company and Harlow with the purpose of deceiving the public as to the ownership of the lots.   Any interested person could have promptly determined where the title to the lots resided.

Parcels of the property were doubtless sold, or agreed to be sold, by Harlow to purchasers numerous, and in localities diversified, and there was no legal or moral obligation resting upon the Bon Air Company to seek out and to inform these unknown persons of the contractual relations and state of accounts between the company and Harlow.

[2] Appellant was a stranger to Bon Air Company, and even if his position had been such as to entitle him to demand from Harlow a deed for the lots (which is at least doubtful when his default in payments is considered), he could only be protected as, and if, his vendor could have demanded relief from Bon Air Company.   The rights of these parties having been determined by a final decree entered, as we have seen, on July 3, 1926, in the chancery cause of *Bon Air Realty Company, Incorporated* v. *Walter P. Barlow, et als.,*

closes the door upon Padgett in so far as the realty company is concerned.

[3] The court is quite satisfied that the facts alleged do not establish the contention of appellant that Harlow was the agent of Bon Air Company, and is also of the opinion there is no privity between appellee and Padgett. Whatever rights appellant has, if any, must be traced through Harlow with whom he contracted.

[4] "Before a stranger can avail himself of the exceptional privilege of suing for the breach of an agreement, to which he is not a party, he must at least show that it was intended for his direct benefit." *German Alliance Ins. Co.* v. *Home Water Supply Co.*, 226 U. S. 220, 33 S. Ct. 32, 57 L. Ed. 195, 199, 42 L. R. A. (N. S.) 1000; *Robins Dry Dock & Repair Co.* v. *George Flint, et al.* (1927), (U. S.) 48 Sup. Ct. 134, 72 L. Ed. ——; advance opinions No. 4, December, 1927, page 143, U. S. Reports.

[5] Privies are "persons connected together or having a mutual interest in the same action or thing, by some relation other than that of actual contract between them." Black's Law Dict. 32 Cyc. 388; *Western Loan & Sav. Co.* v. *Silver Bow Abstract Co.*, 31 Mont. 448, 78 Pac. 774, 107 Am. St. Rep. 453; Jones on Evidence (2nd ed.) page 1664.

[6] Having reached the conclusion that the allegations of the appellant's bill do not make out a case of principal and agent as respects Bon Air Company and Harlow, and that there is no privity between Padgett and the appellee, it follows that the decree of the circuit court sustaining the demurrer to the bill and dismissing the cause is plainly right.

*Decree affirmed.*