BENTON, Judge,
concurring, in part, and dissenting, in part.
For the reasons that follow, I would reverse the conviction and remand for a new trial.
I.
I agree with the majority opinion’s view that Highsmith v. Commonwealth, 25 Va.App. 434, 489 S.E.2d 239 (1997), the sole case cited by Waters in support of his res judicata argument, does not support Waters’s contention that res judicata principles apply in this case. I do not agree, however, that privity was not implicated.
*650 Relying upon well established precedent, we held in Highsmith that “ ‘the doctrines of res judicata and collateral estoppel apply to criminal, as well as civil, proceedings.’ ” 25 Va.App. at 441, 489 S.E.2d at 242 (citation omitted). See also Hagen v. Utah, 510 U.S. 399, 409, 114 S.Ct. 958, 964, 127 L.Ed.2d 252 (1994) (noting that “ ‘res judicata is an affirmative defense in both criminal and civil cases’ ”).
“ ‘Res judicata is a judicially created doctrine founded upon the considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties.’ ” Res judicata, which literally means a “matter adjudged,” precludes relitigation of a cause of action once a final determination on the merits has been reached by a court of competent jurisdiction.
CDM Enterprises, Inc. v. Manufactured Housing Board, 32 Va.App. 702, 709, 530 S.E.2d 441, 444 (2000) (citations omitted). “[F]our preclusionary effects [are] embraced by the doctrine of res judicata: (1) res judicata-bar, (2) merger, (3) direct estoppel, and (4) collateral estoppel.” Dotson v. Harman, 232 Va. 402, 405, 350 S.E.2d 642, 644 (1986).
One of the indictments charged Tyrone L. Waters with felony wounding by mob in violation of Code § 18.2-41. This statute provides as follows:
Any and every person composing a mob which shall maliciously or unlawfully shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disable, disfigure or kill him, shall be guilty of a Class 3 felony.
Code § 18.2-41.
The record indicates that the Commonwealth had earlier prosecuted David Allen Hicks, a codefendant and member of the same mob, under an indictment that also charged Hicks with felony wounding by mob, a violation of Code § 18.2-41. At Hicks’s trial, the judge found that the mob committed a simple assault and battery upon Claude Shifflett and, therefore, convicted Hicks of a violation of Code § 18.2-42, which *651 provides that “[a]ny and every person composing a mob which shall commit a simple assault or battery shall be guilty of a Class 1 misdemeanor.” Citing this conviction, Waters’s attorney filed a motion prior to Waters’s trial, “to reduce ... the charge of felony assault by mob to misdemeanor assault by mob, upon the application of constitutional Double [Jeopardy] in the form of Res judicata.” The trial judge denied the motion. At the conclusion of the trial, the jury convicted Waters only of violating Code § 18.2-41.
“It is the general rule that the acquittal of one person cannot be pleaded as a bar to the prosecution of another.” State v. Hentschel, 98 N.H. 382, 101 A.2d 456, 457 (1953). This rule is grounded, however, upon the principle that “ ‘the guilt of the second defendant depends on proof of his own illegal activity and intent.’ ” Id. (citation omitted). Thus, the general rule may give way “where the crime involves concerted activity [such] that the general rule does not apply.” Id. See United States v. Austin-Bagley, 31 F.2d 229, 233 (2d Cir.1929) (noting that the plea may be invoked when the acquittal of all but one party to a conspiracy has occurred and the defendant is being prosecuted as the remaining conspirator).
(A)
“[F]or purposes of res judicata, a ‘cause of action’ involves an assertion of particular legal rights arising out of a definable factual transaction.” Davis v. Marshall Homes, Inc., 265 Va. 159, 172, 576 S.E.2d 504, 510 (2003). The indictment in this case charged Waters with the same concerted action that was the basis for its prosecution of the codefendant Hicks, who earlier was acquitted of the felony and was convicted of the misdemeanor. The evidence proved Hicks wielded the bat during the attack on Shifflett, whom Waters is charged with striking with his fist. In Hicks’s trial, the judge found that the mob committed simple assault or battery, see Code § 18.2-42, and, thus, found that the evidence failed to prove the requisite intent under Code § 18.2-41. In short, the trial judge *652 found that a mob existed but found that the act was a simple assault, not a wounding resulting from a malicious intent.
Discussing the two statutes, the Supreme Court recently explained as follows:
In order to sustain a conviction of maiming by mob under Code § 18.2^11, the evidence must establish that the accused was a member of a group composing a mob; that the mob caused the victim bodily injury; and that the mob acted with the malicious intent “to maim, disable, disfigure or kill” the victim. In order to sustain a conviction of assault or battery by mob under Code § 18.2-42, the evidence must establish that the accused was a member of a mob and that the mob committed simple assault or battery. “The requisite intent under Code § 18.2-41 to maliciously maim, disable, disfigure or kill is the only difference between the two offenses.”
Commonwealth v. Leal, 265 Va. 142,146, 574 S.E.2d 285, 287-88 (2003) (citation omitted). See Harrell v. Commonwealth, 11 Va.App. 1, 6, 396 S.E.2d 680, 682 (1990) (holding that “[t]he statutory definition of a mob [in Code § 18.2-38] requires that the act of assembling be done for a specific purpose and with a specific intent”). Thus, in a prosecution under Code § 18.2-41, an individual intent is not the guiding issue because “criminal accountability flows from being a member of the mob.” Id. at 8, 396 S.E.2d at 683. The graveman of the offense is the conduct of the mob and the intent of the mob.
The trial judge’s ruling in Hick’s prosecution, that the concerted action was of the non-felonious category, is significant.
[O]nce the group assembled comprises a mob, if the assault or battery which is committed is a simple assault or battery, then because of Code § 18.2-57, every person composing the mob becomes criminally culpable even though the member may not have actively encouraged, aided, or countenanced the act. Thus, criminal accountability flows from being a member of the mob, regardless of whether the member aids and abets in the assault and battery. The *653 characterization of the group action as the act of a mob has added significance because not only did it affect the class of felony for which [the accused] could have been convicted, but also meant that he could have been convicted even if the jury had believed that a person other than [the accused] had struck [the victim] with the club. Therefore, the question of whether the evidence was sufficient to establish that this was a mob offense is significant as to both the theory of guilt and the class of felony for which [the accused] was prosecuted.
Id. When the Commonwealth charged Hicks and Waters with being part of the same mob, the causes of action essentially were alleged to be the same for res judicata purposes.
(B)
Res judicata applies to the actual parties in a case and to those in privity with them. See City of Virginia Beach v. Harris, 259 Va. 220, 229, 523 S.E.2d 239, 243 (2000). “In other words, the doctrine applies to anyone ‘so identified in interest with [a party] that he represents the same legal right, precisely the same question, particular controversy, or issue.’ ” CDM Enterprises, Inc., 32 Va.App. at 710, 530 S.E.2d at 445 (citation omitted). “Privies are ‘persons connected together or having a mutual interest in the same action or thing, by some relation other than that of actual contract between them.’” Padgett v. Bon Air Realty Co., 150 Va. 841, 847, 143 S.E. 291, 293 (1928) (citation omitted).
“[A] determination of just who are privies requires a careful examination into the circumstances of each case.” Nero v. Ferris, 222 Va. 807, 813, 284 S.E.2d 828, 831 (1981). As previously explained, Waters and Hicks were codefendants in prosecutions for violating Code § 18.2-A1, felony wounding by mob. While they were each tried separately for the crime, both Waters and Hicks were indicted on the same charge. The Commonwealth alleged they were both part of the same mob; therefore, the Commonwealth had to prove the mob caused Shifflett’s bodily injury and the mob acted with malicious intent to maim, disable, disfigure, or kill Shifflett. Thus, *654 Waters and Hicks’s interests are so connected that they are in privity with each other for res judicata purposes.
(C)
I believe that the determinative issue in this case, which Waters fails to address, is not cause of action or privity but, rather, the requirement of mutuality. The Supreme Court of the United States has held that the doctrine of nonmutual estoppel does not apply against the government to preclude relitigation of issues when the doctrine of collateral estoppel is invoked in a criminal case and the parties to the two proceedings are not the same. See Standefer v. United States, 447 U.S. 10, 21-25, 100 S.Ct. 1999, 2006-08, 64 L.Ed.2d 689 (1980). I believe that the rationale for this holding logically applies in criminal cases where the issue is res judicata. But see Nevada v. United States, 463 U.S. 110, 143, 103 S.Ct. 2906, 2925, 77 L.Ed.2d 509 (1983) (applying the principles of res judicata against the government in a civil case where no mutuality existed).
Moreover, in view of the Supreme Court of Virginia’s “considered, unanimous decision to resist the so-called ‘modern trend’ and not to abrogate the mutuality requirement [of collateral estoppel],” Selected Risks Ins. Co. v. Dean, 233 Va. 260, 264, 355 S.E.2d 579, 581 (1987), I believe the same principle would apply to bar the doctrine of res judicata in criminal cases in Virginia where mutuality does not exist. Because of this requirement of mutuality of estoppel in the application of res judicata in criminal prosecutions, I concur in the holding that Waters cannot invoke the bar of res judicata as a defense. Simply put, Waters has failed to adequately support his argument that the absence of mutuality does not prevent the defensive use of res judicata against the government in a criminal prosecution.
II.
Although the jury convicted Waters only of violating Code § 18.2-41, the Commonwealth prosecuted him for numerous *655 offenses. The Commonwealth also charged Andre James with numerous offenses arising out of the same incident on August 3, 2002 and later obtained James’s agreement to testify against Waters. The Commonwealth failed, however, to disclose to Waters information that was revealed when James was evaluated by a psychologist for competency to stand trial. Moreover, when Waters sought to cross-examine James at trial regarding the evaluation, the judge sustained the prosecutor’s objection and excluded the testimony as irrelevant. I would hold that the trial judge erred in excluding the evidence and in denying the post-trial motions for a mistrial.
The record established that when the police first questioned James he told the police he did not enter the house and did not know Waters. The prosecutor delivered to Waters the statement James gave to the police, but the prosecutor did not inform Waters either that James told the prosecutor he lied when he gave the statement or that James would testify as to a different version of events. Contrary to his statement, James testified that he lied to the police and that he decided to be truthful and to assist the Commonwealth after he was identified as a participant. He also testified that Waters was in the bathroom of the house where Shifflett was beaten.
To counter the prosecutor’s objection, Waters’s attorney proffered to the trial judge that James had undergone a competency evaluation and that his mental ability was relevant because it “has to do with [James’s] ability to recall events, to accurately notice things.” He proffered that it was “evidence that can be used to impeach a witness.” Accepting the prosecutor’s argument that Waters was not entitled to the “mental evaluation when [it comes] back clean,” the trial judge barred Waters from raising this issue for the jury’s consideration. Later, at the post-trial hearing, Waters’s attorney represented to the trial judge that James’s attorney said the evaluation report disclosed that James has “diffuse brain damage,” functions at a second grade level, is “borderline mentally retarded,” and has taken various medications for his mental difficulties. The trial judge considered the report in camera and disclosed that James’s scores on the report indi *656 cate “mildly retarded intellectual functioning,” but the judge concluded this was not “exculpatory.”
“Combined, the rights to compulsory process, confrontation and due process give the defendant a constitutional right to present relevant evidence.” Neeley v. Commonwealth, 17 Va.App. 349, 356, 437 S.E.2d 721, 725 (1993). Thus, we have held that
a defendant cannot be deprived of the opportunity to put his evidence and version of the facts before the jury so “as to deprive a criminal defendant of his Sixth Amendment right to confront and cross-examine his accuser and to call witnesses in his defense,” or simply because the trial court finds the prosecutrix’s version more credible than the defendant.
League v. Commonwealth, 9 Va.App. 199, 205, 385 S.E.2d 232, 236 (1989) (citation omitted). The opportunity to present a complete defense “would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on ... credibility ... when such evidence is central to the defendant’s claim of innocence.” Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). These principles have heightened importance when the witness is charged as an accomplice.
Any evidence is admissible which tends to affect the credibility of accomplices or the weight of their testimony by showing what influences, if any, were brought to bear upon them____Defense counsel should be afforded great latitude in cross-examining accomplices testifying against a defendant.
Woody v. Commonwealth, 214 Va. 296, 297-98, 199 S.E.2d 529, 531 (1973).
The record on appeal establishes that the evaluation report does indeed disclose facts as represented by Waters’s attorney to the trial judge. That information was germane to James’s credibility and ability accurately to perceive the events at issue. The trial judge’s error in not allowing Waters to question James about his psychological examination and the *657 results of that examination deprived Waters of the opportunity to expose to the jury matters that bore on James’s credibility and ability to perceive the facts. “ ‘[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.’ ” Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). “Confrontation means more than being allowed to confront the witness physically.” Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Indeed, it is fundamental that “[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.” Id. at 316, 94 S.Ct. at 1110. The importance of cross-examination bearing on credibility cannot be overstated.
The credibility of witnesses is a question exclusively for the jury, and where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of the evidence as equally balanced, they have the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly.
Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949).
At trial, Shifflett testified that eight men chased him up the stairs and into a bathroom, where they began to punch him, kick him, and hit him with baseball bats. He testified that Waters, whom he did not previously know, “thr[e]w a punch at [him] when [he] was in and out trying to dodge the baseball bat.” The prosecutor stipulated, however, that Shifflett “did not say [at the preliminary hearing] that [Waters] hit him.”
James testified that when the police first questioned him he told them he did not enter the residence. Thus, his testimony at trial was a significant departure from his initial statement to the police. The jury’s determination of his credibility likely *658 had a significant bearing upon how it assessed the strength of Shifflett’s trial testimony, which was consistent with James’s testimony but was also significantly different than Shifflett’s earlier sworn testimony. I would hold that the trial judge erred in barring Waters from examining James about matters bearing on his intelligence, his ability to perceive events, and, therefore, his credibility. In view of the conflicts in the witnesses’ prior inconsistent statements and sworn testimony, this error was not harmless.
Likewise, I would hold that the Commonwealth’s failure to disclose the mental evaluation report constituted a Brady violation. See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). The Supreme Court has rejected any distinction between impeachment and exculpatory evidence, holding that “impeachment evidence ... as well as exculpatory evidence falls within the Brady rule.” United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). The Supreme Court also has held that “if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.” United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976). For the reasons I have discussed above, the weakness in the Commonwealth’s evidence, flowing from the testimony of both Shifflett and James, leaves in doubt whether the jury would have found the same verdict had Waters been permitted to properly cross-examine James. I would hold, therefore, that the evidentiary suppression of the evidence “undermines confidence in the outcome of the trial.” Bagley, 473 U.S. at 678, 105 S.Ct. at 3381.
For these reasons, I would reverse the conviction and remand for a new trial.