UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Causey
Argued at Richmond, Virginia

RONNIE EDWARD CRACK

v.      Record No. 0337-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY BENNETT MALVEAUX
JUNE 13, 2023

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

(Thomas E. Dodd, III; Strentz Greene & Coleman, PLC, on brief),
for appellant.  Appellant submitting on brief.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Ronnie Edward Crack ("appellant") was convicted in a jury trial of rape, in violation of

Code § 18.2-61.  On appeal, he argues that the trial court abused its discretion by denying his

motion to admit certain evidence under the rape shield statute, Code § 18.2-67.7.  Appellant also

contends that the evidence was insufficient to convict him of rape.  For the following reasons, we

affirm.

I.  BACKGROUND

"'In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below].'  Accordingly, we regard

as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

be drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

### A. Appellant's Motion for Cross-Examination under Code § 18.2-67.7

Appellant was indicted for raping the victim, V.N., on or about November 4, 2018.[1] Pursuant to Code § 18.2-67.7, appellant filed a pre-trial motion requesting that he be allowed to cross-examine V.N. at trial about her prior sexual contacts with him. Appellant contended that he and V.N. had engaged in consensual sexual relations on three occasions and that those acts of consensual sex were relevant to his defense that "the act complained of was not accomplished by force, threat, or intimidation."

At the hearing on the motion, Courtney Snellings testified that she had known appellant for seventeen years and V.N. for eighteen years and that she had previously been in a romantic relationship with appellant. Courtney stated that sometime prior to or during March 2017, while she and appellant were living together, a home security camera recorded V.N. performing oral sex on appellant in the couple's driveway.

Appellant testified that the sexual act described by Courtney had occurred in either January or February 2017. He also stated that V.N. had "started . . . making moves on [him] . . . way before that." Appellant further testified that three weeks after the driveway sexual encounter, he went to V.N.'s house and had sex with her. He also stated that he and V.N. had sex again in April 2018, although he qualified his statement by saying that he was "bad with [his] dates." Appellant denied using force of any kind during these three sexual encounters with V.N.

On cross-examination, appellant conceded that the oral sex with V.N. had occurred in January or February 2017, his second sexual encounter with V.N. had occurred in March or April 2017, and his third sexual encounter with V.N. had occurred a few months later; thus, all of the

---

[1] To protect the victim's privacy, we use initials rather than her name.

sexual acts had occurred "in the same year" of 2017.  Appellant also stated that, on an unspecified date while Courtney was on vacation, V.N. had sent him text messages indicating that she "wanted to have sex with [him] so, so bad."

The trial court initially determined that appellant's proffered evidence of three consensual sexual contacts with V.N. was relevant pursuant to the rape shield statute.  However, the court ultimately ruled that the proffered evidence failed to satisfy the admissibility requirements of the statute, because it was "not evidence of sexual contact that [was] reasonably proximate to the offense date."  The court therefore denied appellant's motion.  Appellant later moved for reconsideration, arguing that his prior sexual contact with V.N. was "consistent with a surreptitious relationship."  The trial court denied the motion without a hearing.

### B.  Events at Trial

V.N. testified at trial that she had known appellant since 2002.  In November 2018, appellant was in a relationship with Courtney and V.N. had broken up with Courtney's brother, Chris Snellings, who was the father of V.N.'s children.  V.N. stated that she had not spoken with appellant for "nine or ten months" prior to November 3, 2018.  On that evening, Chris picked up the children from V.N.'s home.[2]  V.N. then took a sleep aid before going to bed.  When she fell asleep, she was wearing a nightgown and underwear.

V.N. awoke between 3:00 and 4:00 a.m. on November 4, 2018, to find appellant "on top of [her] and [her] underwear . . . already off."  She smelled "[l]ots of alcohol" on appellant, who "started taking [her] clothes off and trying to . . . have sex with [her]."  Appellant inserted his penis into V.N.'s vagina.  V.N. twice said to appellant, "you're raping me," but appellant just "shoved [her] into pillows and [she] couldn't really talk after that."  V.N. testified that her body was "pretty heavy . . . from taking sleeping medicine" and she did not "think [she] was very good at fighting

---

[2] V.N. testified that she and Chris had joint custody of their children.

- 3 -

[appellant]." She "tried to scoot off the bed" but appellant "had [her] planted really hard." He then "flipped" her and "started raping [her] really viciously." V.N. described appellant's conduct as "animalistic" and stated that she couldn't breathe and thought she was going to die.

After ten to fifteen minutes, appellant "just stopped" and apologized, stating, "oh, my God, did I hurt you? I'm so sorry." Appellant also told V.N. that he "didn't mean to be so rough" and "didn't know what [he] was doing." V.N. knew that appellant had ejaculated "[b]ecause it was all slimy between [her] legs and [her] thighs." She denied having consented to sexual intercourse with appellant.

After the attack, appellant called someone named Mickey to come and pick him up. He also asked V.N. if she had any liquor, and she gave him a miniature bottle because she "just wanted to get him out." Appellant left V.N.'s home after giving her a hug.

V.N. testified that she did not immediately call the police because she was in shock and needed to collect herself. The following morning, V.N. called both Chris and his sister-in-law, Dawn Snellings, with whom V.N. was close. She stated that she called Dawn because she "needed someone to . . . talk [her] down" from "feeling the way [she] felt" because she "didn't want to get [appellant] in trouble." Asked why she did not want appellant to get in trouble, V.N. explained that she looked upon him as "part of the family" and "part of the people that [she had] been with" for sixteen years. V.N. eventually called the police about seven or eight hours after the attack.

After speaking with the police, V.N. went to the hospital, where she was examined by sexual assault nurse examiner Alison Early. Early testified that she documented numerous bruises on V.N.'s legs, arms, and neck and that V.N. told her she had suffered the bruises while trying to fight off appellant. When discussing an exam photograph of V.N.'s external genitalia that was entered into evidence, Early noted a break in the skin of the labia, an abrasion with petechial

- 4 -

hemorrhages and a break in the skin near the vaginal opening, and additional breaks in the skin toward the lower part of V.N.'s vagina.

During her examination of V.N., Early collected a physical evidence recovery kit ("PERK"), including swabs from V.N.'s vagina, external genitalia, thighs, and arms, as well as scrapings from beneath V.N.'s fingernails. The Virginia Department of Forensic Science analyzed the PERK swabs and buccal swabs collected from appellant and certified that appellant could not be eliminated as a contributor to the DNA profile developed from spermatozoa swabbed from V.N.'s external genitalia and thighs. Additionally, appellant could not be eliminated as a contributor to the DNA profiles developed from the swabs from V.N.'s arms and from her fingernail scrapings.

Detective Brandon Handy of the Spotsylvania County Sheriff's Office interviewed appellant after giving him Miranda[3] warnings. Brandon testified that appellant acknowledged having sex with V.N. at her home between 2:00 and 4:00 a.m. on November 4, 2018. Appellant also told Handy that he had not called V.N. prior to going to her home and that his friend Mickey Layne had driven him there because he had been too drunk to drive.

Layne testified that in the early morning hours of November 4, 2018, he drove to a bar to pick up appellant. At appellant's request, Layne then drove him to a "friend's house" where appellant left the car and knocked on the front door. At first, no one answered, but as appellant returned to the car, the door opened and appellant went inside. After twenty minutes, Layne texted appellant that he had to leave because he had to go to work. Appellant left the home three minutes later, "gave somebody a hug and kiss . . . and he had a little airplane bottle of liquor" with him.

Appellant moved to strike at the close of the Commonwealth's case in chief, and the trial court denied the motion. He renewed his motion to strike after presenting his own evidence,

---

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

arguing that although V.N. said she had been raped, his own account was that they had consensual sex. The court denied appellant's motion.

The jury convicted appellant of rape. This appeal followed.

## II. ANALYSIS

### A. Denial of Appellant's Motion Pursuant to Code § 18.2-67.7, the Rape Shield Statute

Appellant argues that the trial court abused its discretion by denying his motion to cross-examine V.N. about their prior consensual sexual activity. Specifically, he contends that the court erred in finding that his proffered instances of prior consensual sexual acts with V.N. were not reasonably proximate to the date of the offense. He notes that the proffered prior acts all occurred during 2017 and that his charged offense date was November 4, 2018. Relying on *League v. Commonwealth*, 9 Va. App. 199 (1989), *adopted on reh'g en banc*, 10 Va. App. 428 (1990), "where the Court found prior sexual conduct to be proximate despite the passing of nine months," appellant contends that "this is a similar situation where under the totality of the circumstances, the prior sexual acts were proximate to the offense date" and "consistent with a surreptitious relationship."

We review a trial court's evidentiary decisions for abuse of discretion. *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022); *Ortiz v. Commonwealth*, 276 Va. 705, 712, 717-20 (2008) (applying abuse of discretion standard to review trial court's exclusion of evidence under the rape shield statute). A trial court "can abuse its discretion in three ways: (1) by failing to consider a relevant factor that should have been given significant weight, (2) by considering and giving significant weight to an irrelevant or improper factor, and (3) when the . . . court, while weighing 'all proper factors,' commits a clear error of judgment." *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Lawlor v. Commonwealth*, 285 Va. 187,

- 6 -

213 (2013)).  We will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019).

Virginia's rape shield statute provides, in pertinent part, that "[u]nless the complaining witness voluntarily agrees otherwise, evidence of specific instances of . . . her prior sexual conduct" is admissible only if it is relevant and is "[e]vidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation."  Code § 18.2-67.7(A), (A)(2).  Additionally, to be permitted to introduce such evidence, the defendant must show that "the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of th[e] case."  Code § 18.2-67.7(A)(2).

In enacting the rape shield statute, the General Assembly "rejected the common law notion that once consensual sex has been shown in the past it always is relevant to prove that subsequent sexual intercourse was consensual."  *League*, 9 Va. App. at 206.  The rape shield statute instead requires the trial court to determine the admissibility of prior sexual conduct between the complaining witness and the defendant "on a case-by-case basis."  *Id.*; *cf. Winfield v. Commonwealth*, 225 Va. 211, 218 (1983) (noting that the statute permits introduction of such evidence only "in carefully limited circumstances").

Here, the trial court concluded that appellant's proffered evidence of prior consensual sexual encounters with V.N. was of acts that were not "reasonably proximate to the offense date."  This Court has previously held that "[t]he determination whether 'prior sexual conduct' is 'reasonably proximate to the offense charged' is a function not only of time, but also of 'the circumstances of [the] case,' including the situation and factors surrounding the prior conduct, the relationship between the parties, and the circumstances of the alleged offense."  *League*, 9

Va. App. at 207 (second alteration in original) (quoting *Graves v. Garraghty*, 618 F. Supp. 1348, 1351 (E.D. Va. 1985)).

In *League*, the victim testified that the defendant raped her while the defendant testified that the sex had been consensual. *Id.* at 203. The defendant also sought to testify that he had consensual sex with the victim "eight or nine months" before the charged rape and that after this consensual encounter, the victim told him that any future sex would cost him fifty dollars. *Id.* at 201-02. Additionally, the defendant stated at a pretrial hearing that immediately before the charged rape, he and the victim referenced their previous discussion about money for sex, but that he did not give her any money. *Id.* at 204. Applying Code § 18.2-67.7(A)(2), the trial court found that the prior consensual sexual encounter did not occur within a period of time reasonably proximate to the offense and excluded the defendant's proffered evidence about that encounter, as well as all references about exchanging sex for money. *Id.* at 203-04. The jury convicted the defendant of rape. *Id.* at 201.

On appeal, we explained that in excluding the defendant's proffered evidence, "the trial court erred by considering only the lapse in time in ruling that the prior sexual conduct was too remote to be admissible, and by failing to consider other circumstances of the relationship." *Id.* at 208. Rather, "the alleged rape was so intertwined with the prior consensual sexual intercourse and the alleged discussion about future sex for money that to exclude that evidence deprived him of a meaningful opportunity to present his defense." *Id.* We noted that allowing the victim to testify that the defendant offered her money for sex on the night of the rape while precluding his testimony about "the prior sexual conduct and the alleged agreement" regarding payment for future sex "present[ed] an incomplete and misleading view of the relationship between the parties." *Id.* at 209. Further, "[w]ithout [the defendant's] evidence, the jury was presented with

a case of an alleged rape between virtual strangers, adding great weight to the [victim's] contention that she did not consent." *Id.* at 208-09.

Upon consideration of the totality of the circumstances here, we conclude that the trial court did not err by finding that the prior sexual acts proffered by appellant were too remote from the charged offense to be admissible. First, although the specific length of time that elapsed between the prior sexual encounters and the charged rape is not dispositive, it remains an important factor. As appellant acknowledged at the pre-trial hearing, all of the alleged consensual sexual encounters occurred during 2017, between January or February of that year and a few months after March or April of that year; thus, the consensual sexual encounters ended approximately one year or somewhat more than one year before the charged rape. Accordingly, this factor supports the trial court's determination that the earlier encounters were not reasonably proximate to the charged rape.

Second, appellant asserts that the 2017 sexual encounters and the sexual intercourse on November 4, 2018, are all consistent with a "surreptitious relationship" between appellant and V.N. Importantly, however, appellant did not testify at the pretrial hearing that he and V.N. were in such a relationship on or immediately before November 4, 2018. Rather, he asserted that they had engaged in three consensual sexual encounters in 2017 and that V.N. had sent him texts on unspecified dates expressing her desire to have sex with him. Appellant's testimony at the pretrial hearing was entirely consistent with V.N.'s testimony at trial that she had not spoken with appellant for nine or ten months prior to the rape. Accordingly, the record does not support appellant's assertion that the 2017 encounters are reasonably proximate to the charged rape because they were part of an ongoing, albeit surreptitious, relationship.

Third, the circumstances of the 2017 encounters, as proffered by appellant, are materially different from the circumstances surrounding the charged rape. Appellant stated at the pretrial

hearing that V.N. repeatedly communicated a desire to have sex with him and that he did have several consensual sexual encounters with V.N. in 2017. By contrast, there is no evidence in the record that appellant and V.N. communicated about having sex before he arrived at her residence on the night of November 4, 2018. To the contrary, V.N. testified that she had not spoken with appellant for many months and appellant told Detective Handy that he had not called V.N. before arriving at her residence. Additionally, Layne, who drove appellant to V.N.'s home the evening of the rape, did not testify that appellant had any contact with V.N. before arriving at her home. Layne further testified that no one initially came to the door at V.N.'s home when appellant knocked on it and that the door opened only when appellant was walking back to Layne's car—facts that support a reasonable inference that appellant's arrival at V.N.'s home was unexpected.

Lastly, we note that, unlike in *League*, the exclusion of appellant's proffered evidence did not create a material risk of misleading or confusing the jury regarding the nature of appellant's and V.N.'s relationship. V.N. testified that she had known appellant for more than fifteen years before the rape and explained her interconnected relationships with appellant and the Snellings. Indeed, V.N. stated that she was reluctant to call the police partly because she considered appellant part of the family and did not want him to get in trouble. Thus, the exclusion of evidence about the 2017 sexual encounters did not improperly influence the jury's credibility determination by "present[ing] . . . a case of an alleged rape between virtual strangers." *League*, 9 Va. App. at 208.

Considering the totality of the circumstances, the trial court did not err in concluding that the 2017 sexual encounters proffered by appellant were not reasonably proximate to the charged offense. *See* Code § 18.2-67.7(A)(2). Accordingly, appellant's evidence of prior consensual sexual contacts between himself and V.N. was not admissible under the rape shield statute, and the trial court did not abuse its discretion in excluding it.

B.  Sufficiency of the Evidence

Appellant also challenges the sufficiency of the evidence to support his conviction for raping V.N.  He argues that the trial court erred by denying his motion to strike because "the primary evidence that the sexual intercourse between [a]ppellant and [V.N.] was not consensual, was the testimony of [V.N.]."

"In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)).  "Under the governing standard, 'we review factfinding with the highest degree of appellate deference.'" *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)).  Accordingly, "[i]n conducting [its] review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them." *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020).  "This deference is owed to both the trial court's assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)).  Our deferential standard of review also "'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn"' from that evidence." *Green*, 72 Va. App. at 200 (alteration in original) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).  "In the end, the

appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.""" *Eberhardt*, 74 Va. App. at 31 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

Code § 18.2-61(A) provides, in pertinent part, that "[i]f any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness . . . he or she shall be guilty of rape." "[A] conviction for rape . . . may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). The credibility of those who testify at trial, and the weight accorded their testimony and the additional evidence, "are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018)).

We conclude there was sufficient evidence for a rational trier of fact to convict appellant of raping V.N. Here, V.N. testified that she woke in the middle of the night to find her underwear off and appellant on top of her. Appellant then inserted his penis into her vagina. Although V.N. twice told appellant, "you're raping me," appellant simply shoved her into pillows so that she could no longer speak. V.N. tried to "scoot off the bed," but appellant had "planted [her] really hard." Appellant continued to have intercourse with V.N. in a manner that was "really vicious[]" and "animalistic." When appellant finally stopped having intercourse with V.N., he apologized, expressed concern that he might have hurt her, and told her that he "didn't mean to be so rough." V.N. had not consented to this act of sexual intercourse with appellant. This testimony by V.N., standing alone, was sufficient for the jury to convict appellant of rape for using force to have sexual intercourse with V.N. against her will. *See Poole*, 73 Va. App. at 368.

Additionally, V.N.'s testimony that she was raped by appellant was corroborated by forensic and other evidence presented to the jury. Sexual assault nurse examiner Early testified that she observed numerous bruises on V.N.'s neck, arms, and legs when she examined V.N. and that V.N. told her she had sustained these bruises while trying to fight off appellant during his attack. Early also testified that V.N.'s external genitalia exhibited breaks in the skin and an abrasion with petechial hemorrhages. Early's photographs of these injuries were entered into evidence for consideration by the jury. Additionally, the testimony of Layne, together with appellant's own statements to police, corroborated V.N.'s account that appellant was at her home at the time of the attack, that he had sex with her during his visit, and that he left the home in the manner described by V.N. Although appellant did not tell police that his sexual intercourse with V.N. was non-consensual, and argued at trial that it had been consensual, the jury was entitled to infer that appellant was being less than candid in an attempt to conceal his guilt. *See Pease v. Commonwealth*, 39 Va. App. 342, 357 (2002) (en banc) (noting that "[t]he jury was entitled to evaluate the reasonableness of the defendant's story" and that it was "'not required to believe the defendant's explanation, and if that explanation is not believed, the jury may infer that the accused is lying to conceal his guilt'" (quoting *Black v. Commonwealth*, 222 Va. 838, 842 (1981))).

Considering the totality of this evidence, a rational trier of fact could have found the essential elements of rape beyond a reasonable doubt and convicted appellant of raping V.N. on November 4, 2018. Accordingly, the trial court was not plainly wrong in denying appellant's motion to strike the evidence.

## III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for rape.

*Affirmed.*